[No. A027920. First Dist., Div. Three. Oct. 17, 1986.]

EMPLOYERS REINSURANCE CORPORATION,
Plaintiff, Cross-defendant and Respondent, v.
PHOENIX INSURANCE COMPANY,
Defendant, Cross-complainant and Appellant;
NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA., Defendant, Cross-defendant and Appellant.

**COUNSEL**

Stephen E. Cone, Mary E. McCutcheon, Farella, Braun & Martel, George E. Sayre and Sedgwick, Detert, Moran & Arnold for Defendant, Cross-complainant and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, David B. Parker and Joseph M. Andrews for Defendant, Cross-defendant and Appellant.

Cresswell, Davis, Cake & McNeely, Cresswell, Cake & Echeguren, Robert T. Cresswell and Ronald D. Echeguren for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**MERRILL, J.**—Plaintiff Employers Reinsurance Corporation (Employers) filed the instant action for declaratory relief seeking contribution from defendants Phoenix Insurance Company (Phoenix) and National Union Fire Insurance Company of Pittsburgh, Pa. (National) for its expenditures in defending and settling a lawsuit against an attorney for professional negligence. Phoenix filed a cross-complaint for indemnity. Judgment was granted by the trial court in favor of Employers on the complaint and Phoenix on the cross-complaint. On the complaint, it awarded Employers $42,204

from Phoenix and $38,903 from National. On the cross-complaint, it awarded Phoenix $4,269 from National and $1,233 from Employers. Phoenix and National appeal from the judgment.

I

In February 1974, Attorney Ralph Sullivan who had provided legal services to one Wayne Lewis for a number of years, represented both Lewis and his wife, Caryl, in a dissolution proceeding (Lewis v. Lewis, Super. Ct. San Mateo County, 1974, No. 181 969). Sullivan prepared a property settlement agreement and procured a final decree of dissolution on September 13, 1974. Caryl had no separate legal advice.

On February 15, 1977, nearly two and one-half years after entry of the final judgment of dissolution, Caryl, represented by new counsel, filed a motion to set aside the judgment on grounds of fraud and mistake. The motion was opposed by Lewis who was represented on these matters again by Sullivan. On March 7, 1977, the motion was denied.

On March 29, 1978, Caryl filed an action for professional negligence against Sullivan (Lewis v. Sullivan, Super. Ct. San Mateo County, No. 220 847). The summons and complaint were not served on Sullivan until May 13, 1980. The gravamen of the complaint was that Sullivan had negligently failed to investigate and properly evaluate the nature and extent of the community property assets.

During the period in question, Sullivan had been insured for professional liability under policies issued by three successive insurers: respondent Employers, appellant Phoenix and appellant National. On May 13, 1980, Sullivan notified Phoenix of the service of the summons and complaint (this notification was later confirmed in writing). On or about May 16, 1980, Phoenix advised Employers of the same. And on May 20, 1980, National was notified as well.

Thereafter, Employers and Phoenix agreed to share equally in the cost of defending Sullivan in the negligence action, although each company reserved its right to seek a judicial determination of their respective defense and indemnity obligations. National refused to defend. Instead, it advised Sullivan by letter that its insurance for the claim was excess to the insurance afforded by Employers and Phoenix.

Employers and Phoenix provided a defense to Sullivan up to the time the subject lawsuit was settled on April 1, 1981. The suit was settled for

$115,000 which was made up of the following contributions: Employers— $110,000; Phoenix—$4,000; and Sullivan—$1,000. Employers and Phoenix shared the cost of defense, each paying $13,046.

Employers filed the instant action for declaratory relief against Phoenix and National, seeking contribution from the two companies for expenditures in defending and settling the lawsuit. Phoenix filed a cross-complaint for indemnity. At issue in the complaints were the liabilities, if any, of each of the three insurance companies under their respective policies.

## II

Employers issued a professional liability insurance policy to Sullivan commencing March 30, 1970. The policy was renewed annually thereafter affording coverage through March 29, 1975. The policy provided coverage on an "occurrence" basis as to acts and omissions which occurred during the policy period. The policy contained a liability limit of $200,000 subject to a self-insured retention of $5,000. The insuring clause provided in part: "The Corporation does hereby agree to insure and indemnify the Assured against loss in excess of the Assured's retention . . . on account of liability imposed upon the Assured by law for damages caused by any act or omission of the Assured, . . . and arising out of the performance of professional services for others in the Assured's capacity as a lawyer as respects claims arising out of such acts or omissions occurring during any indemnity period or as respects claims first made against the Assured during any indemnity period and arising out of such acts or omissions occurring prior to the effective date of this policy . . . ."

The policy also contained the following "other insurance" clause: "If, but for the insurance afforded by this policy, the assured would have other insurance against a loss otherwise covered hereby, the insurance afforded by this policy shall be excess over such other insurance."

The alleged professional negligence on the part of Sullivan occurred during Employers policy period.

Subsequent to Employers policy period, Phoenix issued four successive one-year policies to Sullivan during the period of March 30, 1975, to March 30, 1979. The policies provided coverage on an "occurrence" basis as to acts or omissions which occurred during the policy period, and on a "claims made" basis as to acts or omissions which occurred prior to the policy period. Each policy provided coverage of $250,000 per claim with a $1,000 deductible. The insuring clause provided in part: "To pay on behalf of the

insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured . . . and arising out of the performance of professional services for others in the insured's capacity as a lawyer . . . .

"This policy applies only to acts or omissions committed . . . (a) during the policy period, and/or (b) prior to the policy period if claim is made or suit is brought against the insured during the policy period . . . ."

The Phoenix policy also contained the following "other insurance" clause: "If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, with respect to acts or omissions which occur prior to the policy period, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance* and shall then apply only in the amount by which the applicable limit of liability of this policy exceeds the sum of the applicable limits of liability of all such other insurance." (Italics added.)

The professional negligence suit, Lewis v. Sullivan, was filed March 29, 1978, during the Phoenix policy period.

Subsequent to the Phoenix policy period, National issued professional liability insurance to Sullivan with effective dates of June 1, 1979, to June 1, 1980. The policy provided coverage on a "claims made" basis for claims first made or suits brought against the insured during the policy period. The policy limits were $200,000 per claim with no deductible. The insuring clause provided in part: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as money damages because of any claim or claims first made against the insured and reported to the Company during the policy period, arising out of any act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer . . . . [¶] This policy applies to acts or omissions occurring anywhere in the world provided claim is made or suit is brought . . . prior to the end of the policy period . . . . [¶] A claim shall be considered to be first made when the Company first receives notice of the claim . . . ."

The National policy contained an "other insurance" clause which is substantially identical to that of the Phoenix policy: "If the insured has other insurance against a loss covered by this policy the Company shall not

be liable under this policy for a greater proportion of such loss and claims expenses than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, with respect to acts or omissions which occur prior to the inception date of the policy, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance* and shall then apply only in the amount by which the applicable limits of liability of this policy exceeds the sum of the applicable limits of liability of all such other insurance." (Italics added.)

The summons and complaint in the professional negligence suit were served on Sullivan on May 13, 1980, and National was notified of the action on May 20, 1980, both occurring during the National policy period.

### III

The underlying declaratory relief action proceeded to trial on December 15, 1983. The case was tried primarily upon the basis of an agreed statement of facts and various exhibits attached thereto. Only one witness, Heiberto Velasquez, testified. Velasquez was called to the stand by National. Velasquez had been an underwriter for National during the time it issued its policy to Sullivan. The essence of Velasquez's testimony was that during the time in question, the intent of the carrier was to provide only excess insurance coverage for prior acts and omissions in a case where the insured was already covered for the same via a previous "occurrence" policy. This intent, according to Velasquez, was effected through the carriers "other insurance" clause and reflected in reduced rates for an insured with prior occurrence coverage.

In its judgment and statement of decision the trial court found the policies of all three insurance carriers "at risk," and found that all three policies contained valid "excess" clauses. Accordingly, it held that the three carriers would share pro rata the expenditures in the defense and settlement of the subject professional negligence suit, "according to the applicable policy limits of their respective policies."

Judgment was granted in conformity with these findings. National and Phoenix appeal. We affirm the judgment.

### IV

In reaching its decision in the instant case, the trial court first examined the individual policies of the subject carriers to determine whether or not

each policy, irrespective of the other policies, was "at risk." Once determining that all three policies were at risk, it then examined the other insurance clauses contained within said policies to further assess applicability. Having determined that all three of these clauses constituted valid "excess insurance clauses" which were irreconcilable, the court then under settled principles of law, prorated liability among the three carriers according to the applicable policy limits of their respective policies.

In this appeal, National challenges the approach taken by the trial court in its analysis of the carriers' liability. It maintains that the trial court committed reversible error by interpreting the insurance policies as "a matter of law," without regard to evidence of the intent of the parties to the insurance contracts. It further claims that the trial court's holding is not in keeping with that in *Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835 [140 Cal.Rptr. 493].

Coappellant Phoenix, on the other hand, does not challenge the approach taken by the trial court in its analysis or the principles underlying its decision. Instead, it disputes certain findings of the court. It argues that the court erred in holding that its policy, like the others, is "at risk" and in not giving proper effect to its own "other insurance" clause. And both Phoenix and National take exception to the court's finding that all three policies contain applicable excess insurance clauses.

We find no error in the trial court's analysis, neither in its approach, its findings, nor its ultimate decision.

■ Preliminarily we note, as do the parties, that we are not bound in this instance by the trial court's interpretation of the subject policies. The instant case was tried primarily on the basis of an agreed statement of facts with some attached exhibits. The only extrinsic evidence admitted at trial in aid of the interpretation was the testimony of a single witness and that testimony did not conflict with any other evidence. Generally, "in the absence of conflicting evidence, the question is one of law, and that the reviewing court will give the writing its own independent interpretation . . . ." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 294, p. 305; see also *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; and *Estate of Shannon* (1965) 231 Cal.App.2d 886 [42 Cal.Rptr. 278].)

■ Additionally, we make note of the following principles which govern us in the interpretation of these policies: "Any ambiguity or uncertainty in

an insurance policy is to be resolved against the insurer. . . . [Citation.] ▮ The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citation.] ▮ An exclusionary clause must be conspicuous, plain and clear [citation] . . . ." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) ▮ "The general rule is that if coverage is available under any reasonable interpretation of an ambiguous clause of an insurance policy, the insurer cannot escape its obligations. [Citations.]" (*Chamberlin* v. *Smith, supra,* 72 Cal.App.3d at p. 844.)

As previously stated, the trial court began its analysis by examining each of the carriers' policies individually and irrespective of the other policies, to determine if each was "at risk." This was a perfectly proper way for it to begin and we do the same. ▮ "In order to have uniformity in the interpretation of insurance contracts, this court, in determining whether a particular policy provides coverage, must consider the policy alone as if no other insurance is available. [Citation.] To do otherwise would lead to even more confusing decisions in the area of interpretation of insurance contracts." (*Chamberlin* v. *Smith, supra,* 72 Cal.App.3d at pp. 844-845.)

▮ In so doing, we reach the same conclusion as the trial court, that the policies of all three carriers in the instant case are at risk. Employers' policy is at risk because it covers "acts or omissions occurring during [the] indemnity period," that is from March 30, 1970, to March 29, 1975. The "act or omission" here (i.e., Attorney Sullivan's alleged negligence in the handling of the dissolution proceeding), took place during this time frame.

Phoenix' policy is also at risk in that it covers "acts or omissions committed . . . during the policy period [that is from March 30, 1975, to March 30, 1979] and/or . . . *prior to the policy period if claim is made or suit is brought against the insured during the policy period* . . . ." (Italics added.) Sullivan's alleged negligence was found to have taken place prior to the Phoenix policy period. The complaint against Sullivan, however, was filed during the policy period (i.e., Mar. 29, 1978) thus triggering the operative language "or suit is brought" in the Phoenix policy.

▮▮ The position of Phoenix that the term "suit brought" contemplates not only the filing of a lawsuit but the receipt of some kind of notice "such as a summons or other process" by the insured or his representative, is unpersuasive. There is nothing in the record to support this contention. Moreover, the language of the policy itself indicates otherwise.

Phoenix' reliance upon the case of *Hoyt* v. *St. Paul Fire and Marine Ins. Co.* (9th Cir. 1979) 607 F.2d 864 is misplaced.

In *Hoyt,* the court was faced with determining if an attorney's letter written to the insured attorney constituted a "claim" within the meaning of the "claims made" clause of a professional liability insurance policy issued by the insurer. The court held that the letter was not a claim but was merely a request for information and explanation as to why the insured attorney had drafted a will in a particular manner. In arriving at its decision the court pointed to the language in the policy (similar to the language in the Phoenix policy) which states: "If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." (*Id.,* at p. 867.) The court said, "Thus, the 'claim' contemplated is unambiguously in the nature of a demand or notice." (*Ibid.*)

On the basis of this decision, Phoenix argues that "[b]y implication and analogy, the term 'suit brought' necessarily signifies that summons or other process must be served upon the policy holder to trigger its 'prior acts' coverage." Phoenix' argument, however, is seriously flawed for several reasons. By use of the disjunctive "or" it is apparent that the terms "claim is made" and "suit is brought" are not one and the same. Furthermore, if Phoenix had intended for the term "suit is brought" to mean both the filing of a lawsuit and receipt of notice, it could have so specified in the policy. In addition, there is an inherent difference between the "making" of a claim and the "bringing" of a lawsuit. The former, by its very nature, involves some kind of notice. The latter only requires the filing of a complaint.

"Insurance policies, like other forms of contracts, are interpreted as a reasonable man would understand them. The terms of policies are construed in their plain, ordinary, and popular sense." (6B Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4254, p. 25.) We hold that the "plain, ordinary, and popular sense" meaning of the term "suit brought" denotes the filing of a lawsuit and nothing more.

Finally, we find that the National policy is at risk as well. That policy covers the period of June 1, 1979, to June 1, 1980, and applies to "any claim or claims first made against the insured and reported to the Company during the policy period . . . . [¶] A claim shall be considered to be first made when the Company first receives notice of the claim . . . ." Complaint and summons were served on Sullivan in May 1980 and National was notified thereof on or about May 20, 1980, both events occurring within the National policy period.

Having examined the insuring clauses of all three policies in the instant case and determined that they are all at risk, we turn next to an examination of the respective "other insurance" clauses, as did the trial court. ■ "Where . . . [multiple] insurance policies apply to the same risk, the relative application thereof is generally determined by the explicit provisions of the respective 'other insurance' clauses." (*Continental Casualty Co.* v. *Pacific Indemnity Co.* (1982) 134 Cal.App.3d 389, 394 [184 Cal.Rptr. 583].) In doing so, we reach the same conclusion as the trial court,—that all three policies contain valid excess insurance clauses.

■ Employers' other insurance clause constitutes a simple, straightforward excess clause stated in general terms. It provides, quite simply, that where the insured has other insurance against a loss otherwise covered by Employers, the insurance afforded by the Employers' policy will merely be excess over the other insurance. The clause is broad in scope in that it applies to all losses otherwise covered by the Employers policy.

The other insurance clauses of Phoenix and National, on the other hand, constitute composite pro rata/excess clauses. These clauses, which are identically worded, in essence limit coverage to a pro rata basis when losses which would otherwise be covered under the policies (with the exception of those stemming from acts or omissions occurring prior to the policy period) are covered by other insurance as well. As to losses stemming from prior acts or omissions, the other insurance clauses here limit coverage under the policies to excess insurance and then only "in the amount by which the applicable limit of liability of the [subject] policy exceeds the sum of the applicable limits of liability of all such other insurance."

Phoenix and National argue that since their excess clauses are "contingent" excess clauses applying only as to losses stemming from acts or omissions occurring prior to the policy period, their clauses should be given effect over the "broader" excess clause in the Employers policy as a matter of policy. However, they cite no pertinent authority in support of their argument, nor do we find any. Furthermore, we find no merit in this assertion. While it is true that the excess clauses of Phoenix and National are narrower in scope than that of Employers, it is also true that they are harsher in application. Under the Employers' excess clause, excess losses are covered to the policy limit. Under the Phoenix and National excess clauses, on the other hand, excess losses are covered only in the amount by which the policy limit exceeds the sum of the applicable policy limits of all other valid coverage. Thus, in a case such as ours, in the event of excess losses, they would be covered far less under the policies issued by Phoenix and National than that issued by Employers. Contrary to appellants' assertion, such

clauses are not favored by the law for they have "the added disadvantage that [their] partial escape character is more or less camouflaged and [do] not provide clear warning for the insured." (*Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 623 [301 P.2d 602].)

Accordingly, we agree with the trial court's finding that all three policies in the instant case contain valid excess insurance clauses which are applicable. ■ Having so found, the resolution of the issue of liability rests not on the policies themselves or the parties' intent therein, but rather on some well-established principles of law. If we were to give effect to all three excess clauses in this instance, they would cancel each other out and afford the insured no coverage whatsoever. We would travel full circle with no place to say "the buck stops here." Such a result is clearly contrary to settled policy. "Although the language of the policy clauses is the prime material for our consideration, when said clauses are irreconcilable other considerations, expressed or not, must determine the result. The validity of [the] clauses, leaving the insured unprotected, is generally considered unacceptable." (*Peerless Cas. Co.* v. *Continental Cas. Co., supra,* 144 Cal.App.2d at pp. 622-623.)

In resolving the apparent conflict in this case, the trial court imposed liability on all three carriers on a pro rata basis "according to the applicable policy limits of their respective policies . . . ." We find the trial court's action in this regard both proper and in keeping with the aforementioned policies and principles. "When two or more applicable policies contain [excess insurance] clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded." (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 507 [99 Cal.Rptr. 617, 492 P.2d 673].) "The reason for this rule is that conflicting excess insurance clauses are, essentially, irreconcilable." (*Continental Casualty Co.* v. *Pacific Indemnity Co., supra,* 134 Cal.App.3d at p. 397.)

A similar result was reached in *Continental Casualty Co.* v. *Pacific Indemnity Co., supra,* a case somewhat similar to ours. In *Continental,* the insured was covered for professional liability by three insurance policies issued by two insurers. The first policy, issued by the first insurer, provided "primary" coverage for professional liability with a limit of $100,000. The second policy, also issued by the first insurer, afforded a combination of "excess" and "escape" coverage, providing for coverage in excess of the primary insurance up to a limit of $500,000, but also providing that if the insured had "other insurance," the policy afforded no insurance except excess insurance over and above the coverage of the other insurance. The third policy, issued by a second insurer, was a composite of primary and

excess coverage. It afforded professional liability insurance but if "other valid and collectible insurance" was available to the insured covering a loss, the policy was deemed to be a policy of excess insurance with a limit of $500,000. An action for professional negligence was brought against the insured. The first insurer negotiated a settlement in the amount of $275,000, paid that amount, and then sued the second insurer for indemnity. The trial court granted summary judgment in favor of the second insurer, finding that the first insurer's second policy was an "escape" policy and, thus, a "primary" policy, and that the second insurer's policy was an "excess" policy.

The Court of Appeal reversed the judgment insofar as it determined that the second insurer was not obligated to share in the settlement of the underlying claim. Relying on the same principles as enunciated herein, the court held that both the second and third policies provided excess coverage over the underlying policy, that the escape clause in the second policy could not be given effect because the underlying primary policy did not fully protect the insured, and that both the first and second insurers were obligated to pay a pro rata share of the settlement in excess of the liability limits of the primary policy. Said the court, "If we construed defendant's policy as other insurance within the meaning of plaintiff's policy, plaintiff would avoid the obligation to provide excess coverage. If we construed plaintiff's policy as other insurance within the meaning of defendant's policy, defendant would avoid the obligation to provide excess coverage. Since the result is a logical circle in which neither plaintiff nor defendant is liable, we conclude that plaintiff's 'umbrella excess' policy and defendant's professional liability policy are excess policies to plaintiff's primary policy, resulting in an obligation on the part of plaintiff and defendant to pay a prorata share of the settlement in excess of the liability limit of the primary policy." (*Continental Casualty Co.* v. *Pacific Indemnity Co., supra,* 134 Cal.App.3d at p. 397; see also *Argonaut Ins. Co.* v. *Transport Indem. Co., supra,* 6 Cal.3d 496; and *Peerless Cas. Co.* v. *Continental Cas. Co., supra,* 144 Cal.App.2d 617.)

National's assertion that the trial court's ruling must be overturned because it is not in keeping with another appellate decision, *Chamberlin* v. *Smith, supra,* 72 Cal.App.3d 835, is without merit as that case is clearly distinguishable from ours.

In *Chamberlin,* the Court of Appeal ruled that there was no pro rata coverage afforded by the insurance policy of one of the insurers even though its policy contained an "other insurance" clause similar to the ones found in the Phoenix and National policies. However, to reach that result the Court of Appeal relied upon the fact that in addition to the other insurance clause

there was a separate provision in the "INSURING AGREEMENTS" part of the policy to the effect "that there will be no coverage for an act, error or omission that occurred prior to the effective date of the policy if there is other insurance . . . ." (*Id.*, at p. 850.) The court determined that such a provision in the "INSURING AGREEMENTS" part of the policy should be treated differently than the "other insurance" clause in the "CONDITIONS" part of the policy. The court held that such a provision is a valid exception from coverage provided by the insurer. In the case at bench, neither Phoenix nor National included such an exception in the insuring agreements part of their policies.

The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

The petition of all appellants for review by the Supreme Court was denied December 30, 1986.