20TH CENTURY INSURANCE COMPANY, Plaintiff–Appellee,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant–Appellant.

20TH CENTURY INSURANCE COMPANY, Plaintiff–Appellee,

v.

ADMIRAL INSURANCE COMPANY, Defendant–Appellant,

and

Liberty Mutual Insurance Company, Defendant.

20TH CENTURY INSURANCE COMPANY, Plaintiff–Appellant,

v.

ADMIRAL INSURANCE COMPANY, Defendant–Appellee,

and

Liberty Mutual Insurance Company, Defendant.

Nos. 90–16537, 90–16552 and 90–16553.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1992.

Decided May 27, 1992.

Randall E. Kay, New & Kay, San Francisco, Cal., for plaintiff-appellee-cross-appellant 20th Century Ins. Co.

Glenn Gould, Martin, Ryan & Andrada, Oakland, Cal., for defendant-appellant Liberty Mut. Ins. Co.

Charles I. Eisner, Boornazian, Jensen & Garthe, Oakland, Cal., for defendant-appellant-cross-appellee Admiral Ins. Co.

Before HALL and WIGGINS, Circuit Judges, and KEEP, Chief District Judge.[1]

KEEP, Chief District Judge:

Following an automobile accident involving an insured motorist driving a rented automobile, the driver's primary insurer satisfied the majority of the claims filed against the driver and then instituted in district court a declaratory judgment action for contribution against the rental car company's primary and secondary insurers. The district court granted summary judgment in favor of plaintiff. This consolidated appeal follows.

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying claims in this case arose from an accident involving an automobile owned by Alamo Rent-A-Car ("Alamo") and operated by George D. Bane, a permissive user. On or about May 25, 1985, George Bane rented a car from Alamo under a rental contract which obligated Alamo to provide liability insurance to Mr. Bane "with limits of liability equal to the financial responsibility limits required by the State in which the vehicle is rented...." On May 30, 1985, Mr. Bane was involved in a two-car accident in which a passenger was killed and two other passengers seriously injured.

At the time of the accident, Mr. Bane carried a primary policy of personal automobile liability insurance issued by Plaintiff–Appellee 20th Century Insurance Company ("20th Century") in the amount of $300,000. Alamo carried a policy of primary insurance issued by Defendant–Ap-

pellant Liberty Mutual Insurance Company ("Liberty"), which provided Alamo with $100,000 of coverage per accident. Alamo carried as well a policy of excess insurance issued by Defendant–Appellant Admiral Insurance Company ("Admiral"), with limits of $100,000 per person and $300,000 per accident for users and renters of Alamo cars.

As a result of the accident, various claims were filed against Mr. Bane. Liberty Mutual contributed $30,000 and 20th Century contributed $300,000 toward the settlement of these claims. 20th Century subsequently filed this action for declaratory relief. On September 20, 1990, the District Court issued an order granting 20th Century's motion for summary judgment and denying the cross-motions of Liberty and Admiral. Liberty was ordered to pay $70,000 plus pre-judgment interest to 20th Century. Admiral was ordered to pay $200,000 plus pre-judgment interest to 20th Century.

Appellant Liberty does not contest the court's finding that its policy was primary to those written by Admiral and 20th Century, but contends on appeal that its liability coverage for bodily injury was $30,000, the minimum required by California law, rather than the $100,000 found by the district court. Appellant Admiral also appeals the judgment, contending that it was liable under its policy only after the policies of both Liberty and 20th Century were exhausted. 20th Century cross appeals, arguing that the district court erred in limiting Admiral's contribution to $200,000.

## DISCUSSION

A district court's grant of summary judgment is reviewed by the appellate court *de novo*. The general standard that an appellate court applies in reviewing the granting of such a motion is the same as that employed by a district court initially under Fed.R.Civ.P. 56(c). *Aetna Casualty & Ins. Co. v. Continental Ins. Co.*, 838 F.2d 346,

---

1. The Honorable Judith N. Keep, Chief United States District Judge for the Southern District of California, sitting by designation.

**750**

350 (9th Cir.1988); *Continental Casualty Co. v. City of Richmond,* 763 F.2d 1076, 1078–79 (9th Cir.1985). Under Rule 56(c), summary judgment is proper when the pleadings and discovery, read in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In this case, the parties stipulated to all relevant facts. The only issues raised on summary judgment concern the proper interpretation of the various insurance contracts. The Court of Appeals is not bound by the findings of the District Court with respect to contract interpretation. *Commercial Paper Holders v. Hine (In the Matter of Beverly Hills Bancorp),* 649 F.2d 1329, 1334 (9th Cir.1981).

I. Did the district court err in finding that Liberty's liability was not limited to the statutory minimum of $30,000, but extended to its policy limit of $100,000?

Liberty's policy with Alamo provided $100,000 of coverage per accident between February, 1985 and September, 1985. The policy included the following amendatory endorsement which provided that the coverage available to renters was subject to the terms of the rental contract:

> The insurance provided by this policy for any other lessee, rentee ... is subject to the conditions, restrictions, and limitations, contained in the lease or rental agreement, providing our undertaking under this policy is not enlarged or extended.

The rental contract between Alamo and Mr. Banes provided liability coverage to Mr. Banes in the following terms:

> "4. The company agrees to provide liability insurance with limits of liability equal to the financial responsibility limits required by the State in which the vehicle is rented...."

The district court found Liberty responsible for the full $100,000 guaranteed by the terms of Liberty's contract with Alamo, holding that the clause in the rental agreement that purported to limit the renter's coverage to the minimum required by California law was not sufficiently unambiguous, conspicuous, plain and clear to be effective. On appeal, Liberty argues that it was reversible error for the court to grant summary judgment to 20th Century on this issue, because the insurance provision of the Alamo rental agreement effectively limited coverage for permissive users to the minimum statutory coverage of $30,-000.

Liberty advances two related arguments: first, that the limitation of liability is consistent with California law, and thus that the limiting language of the rental agreement was sufficient to limit its liability to $30,000 under its insurance contract with Alamo; second, that since the insurance provision of the Alamo rental agreement does not disappoint the reasonable expectations of the renter, it need not be conspicuous. 20th Century does not dispute that California law permits an insurer to provide less coverage to permissive users than it does to the named insured, but contends (1) that the limiting provision of the rental car agreement was not successfully integrated into Liberty's insurance policy; and (2) that regardless of the expectations of the consumer, an exclusionary clause must be conspicuous and unambiguous, which the exclusionary clause in Alamo's rental contract was not.

A. *Was the limiting provision of the rental car agreement successfully integrated into the policy of insurance?*

Before reaching the question of whether the limiting clause in the rental contract was sufficiently conspicuous and clear to be effective against Mr. Bane, we must determine whether that clause was effectively incorporated into the insurance policy issued by Liberty. We find persuasive the reasoning of *Hartford Accident and Indem. Co. v. Sequoia,* 211 Cal.App.3d 1285, 260 Cal.Rptr. 190 (1989), a recent California case involving two levels of incorporation by reference. The primary policy addressed in *Hartford* contained a Declaration that stated "See attached exten-

sion schedule of underlying insurance policies forming a part of the policy." The excess insurer argued to the court that the underlying insurance policies named in the extension schedule were, in addition to the extension schedule itself, incorporated by reference and thus a part of its policy with the insured. The court rejected this argument, explaining that in order to be effectively incorporated into the primary policy, the underlying policies would have to become *expressly* a "part of the policy." *Id.* at 1299, 260 Cal.Rptr. 190. The court concluded that, considering the language of the amendments and of the policies themselves, there was no clear intent to incorporate the policies. *Id.* at 1299, 260 Cal.Rptr. 190.

■ The policy at issue here, like that discussed in *Hartford,* contains two levels of incorporation by reference into a primary policy of insurance. The Liberty insurance policy explicitly incorporates by reference any endorsements to the policy, which were anticipated to change the agreements between the contracting parties. Amendatory Endorsement No. 11 in turn provides that "the insurance provided by this policy for the [permissive users] *is subject to the terms, including any limit of liability, conditions, restrictions, and limitations contained in the lease or other rental agreement,* providing our undertaking under this policy is not enlarged or extended" (emphasis added). The amendment thus purports to incorporate the liability-limiting language of the rental agreements between Alamo and its customers.

If the language of *Hartford* is to be read to mean that a document cannot be incorporated by reference unless that document *itself* contains an expression of intent to be incorporated, then the rental agreement was not properly incorporated into the Liberty insurance policy. If, as seems the better reading, *Hartford* held that a determination of whether a document has been incorporated by reference turns on a reading of all the relevant documents, considered together, the rental agreement was properly incorporated. We adopt this latter construction as more consistent with

California contract principles. The *Hartford* court was clear that the doctrine of incorporation by reference is applicable to contracts of insurance, *see id.* at 1299, n. 3; and though the rental agreements did not themselves contain language indicating that they were to be incorporated into the insurance policy, the Amendatory Endorsement, unlike the endorsement in *Hartford,* did unambiguously incorporate the limiting language of the rental agreements into the insurance contracts. We thus find that the liability limiting provisions of the rental agreements were incorporated by reference into the Liberty insurance contract.

**B.** *Is the language of the exclusionary clause in the Alamo–Banes rental agreement sufficient to limit Liberty's liability to the statutory minimum?*

■ California law requires that a limitation of liability in a contract of insurance be "conspicuous, plain and clear" in order to be effective against an insured. *See Steven v. Fidelity & Casualty Co.,* 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1962); *Ponder v. Blue Cross of S. Cal.,* 145 Cal.App.3d 709, 719, 193 Cal.Rptr. 632 (1983). In interpreting the meaning of a contract of insurance, the policy should be read as a layperson would read it and not as it might be analyzed by an attorney or an insurance expert. *Employers Reins. Corp. v. Phoenix Ins. Co.,* 186 Cal.App.3d 545, 554, 230 Cal.Rptr. 792 (1986). To the extent that a policy is ambiguous, any ambiguity or uncertainty is to be resolved against the insurer. The general rule is that if coverage is available under any reasonable interpretation of an ambiguous clause of an insurance policy, the insurer cannot escape its obligation. *Id.,* citing *Chamberlin v. Smith,* 72 Cal.App.3d 835, 844–45, 140 Cal.Rptr. 493 (1977).

**1. Reasonable expectations of the insured**

■ As a preliminary matter, we must determine whether the requirements of clarity and conspicuousness applied by California law to contracts of insurance govern our analysis of the insurance limitation con-

tained in the Alamo rental agreement. The standard for determining whether a contract is subject to California insurance regulation was set out by the California Appellate Court in *Truta v. Avis Rent–A–Car System*, 193 Cal.App.3d 802, 238 Cal.Rptr. 806 (1987), in which the Court explained that:

> In analyzing whether a contract constitutes insurance it is advised that two inquiries be made: "To what extent, in each case, did the specific transactions or the general line of business at issue involve one or more of the evils at which the regulatory statutes were aimed? And were the elements of risk transference and risk distribution, characteristic of transactions at which regulatory statutes were aimed, a central and relatively important element of the transactions or instead merely incidental to other elements that gave the transactions their distinctive character?"

*Id.* at 812–13, 238 Cal.Rptr. 806 (quoting Robert E. Keeton, *Insurance Law* § 8.2(c), at 552 (1971)).

We find that the policy considerations cited by the *Truta* court compel application of insurance regulatory standards to the case at bar. Unlike the policy provisions at issue in *Truta*, which merely allocated a $100 insurance deductible between a rental car company and its lessee, the limiting clause in Alamo's rental contract was the key factor controlling the amount of insurance coverage available to Mr. Bane under the rental agreement. Indeed, this clause would have effectively determined the total amount of insurance available to a driver who, unlike Mr. Banes, was not personally insured. The rental agreement, then, at least to the extent that it limited the insur-

ance provided for a rented vehicle, clearly implicates the concern of the California legislature in passing insurance laws, that the driver/consumer be fully and fairly informed of the limits of his or her coverage. Moreover, risk transference and risk distribution between Alamo's insurer and the renter of the car (or his or her insurance company), were clearly a "central and relatively important element" of the liability-limiting clause. This clause directly allocated risk between Liberty and any other involved parties and, as such, falls squarely within the situation identified in *Truta* as one to which statutory insurance provisions are correctly applied.[2]

### 2. Conspicuousness of the liability limiting clause

California Commercial Code § 1201 provides that "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.... Whether a term or clause is 'conspicuous' or not is for decision by the court." The district court held that the insurance provision contained in the Alamo rental agreement could not be upheld because it is not sufficiently conspicuous. The court stated:

> The clause appears in the middle of the fourth paragraph on the reverse side of the rental contract on a page with extremely small light-colored print. The print is so small that the page on which the clause appears contains more than 2000 words. Furthermore, the paragraphs are not preceded by any bold or larger print or headings to indicate to the reader the general substance of their contents. Further, the extent of insur-

**2.** It should be noted that the defendant in *Truta* was a rental car company itself, rather than, as here, that company's insurer. The *Truta* court was clearly concerned that the stringent regulations imposed on insurers in California not be casually applied to other kinds of businesses that are not engaged in providing insurance. The court noted, "... obviously it was not the purpose of the insurance statutes to regulate all arrangements for assumption or distribution of risk. That view would cause them to engulf practically all contracts.... The question turns, not on whether risk is involved or as-

sumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose." *Truta*, 193 Cal. App.3d at 814, 238 Cal.Rptr. 806 (quoting *Transportation Guar. Co. v. Jellins*, 29 Cal.2d 242, 249, 174 P.2d 625 (1946)). The case at bar, however, involves *only* insurers, and presents to this court only the question of what percentage of specified claims each will be required to pay. Under these circumstances, application of the California insurance laws to the parties is both reasonable and legally consistent with the interpretation of California courts.

ance coverage is a very important term of a rental car contract. The Court finds that the clause in the rental car contract limiting Liberty's coverage is not sufficiently conspicuous, and, therefore, it is not effective.

Liberty does not contest the district court's finding that the liability limiting clause was not in fact conspicuous as a matter of law. It argues, however, that we need reach the issue of whether the clause was conspicuous only if the clause was contrary to the reasonable expectations of the insured. 20th Century disagrees, contending that the requirement that an exclusionary clause be "conspicuous, plain and clear" operates independently of the expectations of the insured.

■ While not an entirely settled issue under California law,[3] the significant weight of California authority holds that an exclusionary clause in an insurance policy must be conspicuous, plain, and clear in order to be effective against the insured, *regardless* of the expectations of the insured. The issue was first modernly addressed by the California Supreme Court in *Steven v. Fidelity & Casualty Co.,* 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1962), in which the Court suggested that the unexpected nature of an exclusion is an independent and sufficient reason for striking the exclusion, not a prerequisite for requiring it to be conspicuous and clear. The court explained,

> In standardized contracts, ... the California courts have long been disinclined to effectuate clauses of limitation of liability which are unclear, unexpected, inconspicuous or unconscionable.... The

disparity in bargaining power between the insured and the insurer is so tremendous that the insurer had adopted a means of selling policies which makes bargaining totally impossible. The purchaser lacks any opportunity to clarify ambiguous terms or to discover new ones. He must purchase the policy before he even knows its provisions.

*Steven,* 58 Cal.2d at 879–884, 27 Cal.Rptr. 172, 377 P.2d 284. The court thus concluded as a matter of law that the exclusionary clause should have been brought to the attention of the insured; since it had not, it could not be effective against him.

California appellate courts interpreting the language in *Steven* have almost uniformly required that exclusionary clauses be conspicuous, plain and clear, and have construed such clauses strictly against the insurer and liberally in favor of the insured. *See Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 751, 161 Cal.Rptr. 322 (1980); *Fields v. Blue Shield of California,* 163 Cal.App.3d 570, 582–83, 209 Cal. Rptr. 781 (1985); *Employers Reinsurance Corp.,* 186 Cal.App.3d at 554, 230 Cal.Rptr. 792; *Merrill & Seeley, Inc. v. Admiral Ins. Co.,* 225 Cal.App.3d 624, 630, 275 Cal. Rptr. 280 (1990). Indeed, one of the most recent cases to have considered this issue explained that the doctrine of reasonable expectation of coverage comes into play where there is an ambiguity in the *language* of the policy; the "conspicuous" requirement appears to rest on an independent inquiry into the reasonableness of holding the insured to knowledge of the exclusionary clause at all. *See Merrill,* 225 Cal.App.3d at 630, 275 Cal.Rptr. 280.[4]

---

3. In *Ponder v. Blue Cross of Southern California,* cited by both parties, the Court stated:

> It is not altogether clear that the *conspicuous* and *plain and clear* requirements apply unless the exclusion 'disappoints the reasonable expectations' of the insured. Some cases couple the two statements in a way as to suggest that only disappointed expectations will activate the conspicuous, plain and clear requirements. (cites) On the other hand, other decisions appear to require exclusions to comply with these requirements without any finding that implementation of the exclusion would 'disappoint the reasonable expectations' of the

insured. (cites) We can imagine exclusions which are so consistent with the scope of coverage an ordinary policyholder expects that it would be unnecessary if not redundant to impose special requirements these clauses be conspicuous and plain and clear. *Nonetheless many, and perhaps most, exclusionary clauses by their very nature deny coverage that consumers otherwise would personally anticipate to be provided under the policy.*

145 Cal.App.3d at 720, 193 Cal.Rptr. 632 (emphasis added).

4. One recent California case may be read to suggest that disappointing the reasonable expec-

In sum, though there is no clear answer under California law, we find that the weight of authority supports the conclusion that the "conspicuous" requirement is independent of the expectations of the insured, and thus so hold. Since the parties·agree that the relevant clause in the rental agreement was not in fact conspicuous, we affirm the district court's finding that the clause limiting Liberty's liability to the statutory minimum was not effective against Mr. Bane.[5]

## II. Did the district court err in finding Admiral's liability precedent to 20th Century's?

Based on the language of the "other insurance" clauses of the two policies, the district court found that Admiral's liability preceded 20th Century's. Admiral challenges the district court's ruling on appeal, arguing that California law requires that all primary insurance policies be exhausted before secondary or excess policies are reached. The question presented by Admiral's appeal, then, is whether the Admiral policy attached upon the exhaustion of the underlying Liberty policy, or whether it properly attached only after the exhaustion of both the Liberty and 20th Century policies.

The issue of the order in which liability attaches in this case has not been directly confronted by the California legislature. California Insurance Code § 11580.9 provides that where two policies cover an automobile owned by a person in the business of renting or leasing motor vehicles, and driven by a nonowner who has leased the vehicle for longer than six months, it shall be conclusively presumed that the policy of the driver shall be primary. Cal.Ins.Code. § 11580.9(b) (West 1992). The statute further provides that except as otherwise stated in subdivisions (a)-(c),[6] where two or more policies of liability insurance apply to the same vehicle, it shall be conclusively presumed that the insurance afforded by the policy in which the motor vehicle is "described or rated as an owned automobile" shall be primary and the insurance afforded by any other policy shall be excess. *Id.* § 11580.9(d).

It is agreed by the parties that section 11580.9 does not apply to the case at bar because none of the relevant insurance policies explicitly "describe or rate" the partic-

---

tations of the buyer is prerequisite to requiring that an exclusionary clause be conspicuous. *See Hurd v. Republic Insurance Co.*, 113 Cal. App.3d 250, 253, 169 Cal.Rptr. 675 (1980). Even in *Hurd,* however, the expectations of the insured are not clearly predicate to the "conspicuous" requirement, but rather are factors considered together in achieving the statutory goal of protecting consumers from limitations of liability of which they could not reasonably have been expected to be aware. *See id.* Moreover, the language of several recent California cases may suggest that an exclusionary clause is presumptively contrary to the expectations of the consumer insured. *See Paramount Properties Co. v. Transamerica Title Ins. Co.,* 1 Cal.3d 562, 569, 83 Cal.Rptr. 394, 463 P.2d 746 (1970); *Ponder,* 145 Cal.App.3d at 721, 193 Cal.Rptr. 632.

**5.** We recognize that our decision may be read to create an apparent incongruity, in that the clause of the Liberty insurance policy insuring Alamo for up to $100,000 was no more conspicuous than the limiting clause in the rental agreement, and the insurance policy was itself housed in Alamo's corporate headquarters in Florida, where it could not be accessed by Mr. Bane or any other leasor of an Alamo rental car; thus, our striking of the rental agreement's limiting language voids one inconspicuous clause in favor of another. We note, however, that only *exclusionary* clauses of insurance policies are subject to the "strict scrutiny" discussed above, as the California courts have found such clauses to uniquely disappoint the reasonable expectations of the average consumer and to avoid the goal for which insurance is procured. The courts have for this reason held that any ambiguity in an insurance policy is to be resolved against the insurer. *See, e.g., Healy Tibbitts Const. Co. v. Employer's Surplus Lines Ins. Co.,* 72 Cal.App.3d 741, 748–49, 140 Cal.Rptr. 375 (1977). Our task, therefore, is not to weigh the coverage and exclusionary clauses against one another, applying the clearer or more conspicuous, but rather to determine whether the exclusionary clause has met the standards of clarity and conspicuousness required by California law. As we find that the clause does not, it must fail in favor of the general coverage provision of the policy itself.

**6.** Subdivision (a) discusses priority of coverage as relates to an insured in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles. Subdivision (c) covers loss arising out of the loading or unloading of a motor vehicle.

ular Alamo car driven by Mr. Bane.[7] Admiral and 20th Century disagree, however, about the approach to be applied in resolving a case to which a provision of the Insurance Code does not explicitly apply. 20th Century suggests that where the Code does not apply, priority of obligation is to be determined by the language of the insurance policies themselves, effectuating to the degree possible the intentions of the parties to the insurance contract. Admiral disagrees, contending that a modern line of California cases instructs that a court is to exhaust *all primary policies* before reaching secondary or excess policies, and thus that the focus of a court's inquiry is not the specific language of the "other insurance" clauses of the policies, but rather the fundamental distinction between a primary and excess policy. Admiral asserts that comparing contractual language is appropriate only *within* a class of insurance, and thus that the district court erred in analyzing the "other insurance" clauses of the 20th Century and Admiral policies.

*Fireman's Fund Indemnity Corp. v. Prudential Assurance Co.,* 192 Cal.App.2d 492, 13 Cal.Rptr. 629 (1961), cited by 20th Century, describes facts analogous to those present here. In *Fireman's Fund,* as here, the automobile owner's primary insurer conceded liability and paid the limits of its policy; the driver's insurer and the owner's excess insurer then brought a declaratory action to determine the priority of liability as between them. The driver's policy provided that "the insurance under this policy with respect to loss arising out of the maintenance or use of any hired or non-owned automobile shall be excess over any other valid and collectible insurance available to the insured." *Id.* at 494, 13 Cal. Rptr. 629. The owner's excess policy provided that " 'liability shall attach only after

the Primary Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability.' " *Id.* (emphasis omitted). Comparing the language of the two policies, the Court stated,

> [D]espite appellant's [the excess insurer's] contention that its policy was 'excess' over all other insurance, the policy did not so provide. The language of the policy fails to state clearly and unequivocally that its liability attached only after imposition of liability upon respondent [the driver's primary insurer]....
>
> . . . .
>
> *The clause under which appellant would entail respondent's policy as 'other insurance' refers to other insurance which Maryland [the owner's primary insurer] can enlist.* If Maryland can reduce its loss by means of other insurance, appellant gets that benefit. But Maryland is the conduit, and if the conduit is blocked, appellant fails.

*Id.* at 495–96, 13 Cal.Rptr. 629 (emphasis added). The court thus concluded that because the excess insurer's policy contained a limited declaration applicable solely to the primary insurer's other insurance, and did not contain a precise other insurance provision applicable to *all* other insurance, the excess insurance was properly applied before the driver's primary insurance. *See id.*

Admiral argues that *Fireman's Fund* and its progeny,[8] relied on by the district court below, are distinguishable and inapplicable to the case at bar because all predate January 1, 1971, the effective date of Insurance Code sections 11580.8 and 11580.9. Admiral suggests that since 1971, courts have determined priority by labeling policies as primary, secondary, etc., and then apportioning liability within a class,

---

7. The Liberty policy covers "Any automobile owned, leased to or operated by Alamo Rent–A–Car, Inc." The California courts have interpreted § 11580.9(d) to require a "particularization" of the vehicle in the policy, such that the statute does not reach a policy that does not describe or rate any particular vehicle, but simply insures all vehicles owned by a named corporation. *See Hartford,* 211 Cal.App.3d at 1297, 260 Cal. Rptr. 190. Moreover, the court has held that

the Code is not to be applied beyond its explicit provisions, stating that "[b]eyond that determination the statute does little to assist us in the resolution of the dispute." *Id.*

8. *Home Indem. Co. v. Mission Ins. Co.,* 251 Cal. App.2d 942, 60 Cal.Rptr. 544 (1967); *Indemnity Ins. Co. of N. America v. Pacific Clay Products Co.,* 13 Cal.App.3d 304, 91 Cal.Rptr. 452 (1970).

rather than by looking to the liability-determining language of each applicable policy. Admiral would therefore conclude that Mr. Banes' primary policy must be exhausted before Alamo's excess insurer is reached.

We are not persuaded by Admiral's analysis.[9] The cases cited by Admiral, decided since *Fireman's Fund*, have not relied solely on judicially created labels to accord priority, but rather have focused on the specific language of the policies' "other insurance" clauses. *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.App.3d 593, 178 Cal.Rptr. 908 (1981), cited by Admiral for the proposition that all primary policies should precede secondary policies without reference to the "other insurance" clauses of the policies, is in fact inapposite. Admiral suggests that *Olympic* announced a policy that all available primary policies covering a loss must be exhausted as a prerequisite to the triggering of excess coverage, even if one of the primary policies was not listed as underlying insurance by the excess carrier. *Olympic*, however, defined a primary policy as one wherein, *under the terms of the policy*, liability attaches immediately upon the happening of the occurrence that gives rise to liability. *Id.* at 597, 178 Cal.Rptr. 908. The approach of *Olympic* thus suggests that we look to the language of each policy to determine when it purports to attach, focusing on the intended application of each policy to the particular collision at issue, and applying judicially-crafted presumptions of priority only when terms of applicable policies are in conflict.

The *Olympic* approach was refined in *Hartford*, in which the court indicated that apart from whether a policy might generally be classified as "primary" or "excess," policies "applicable to the same loss may be 'primary' or 'excess' *with respect to each other* depending on a variety of factors including statutory presumptions, *the 'other insurance' clauses of the policies*, etc. ...." 211 Cal.App.3d at 1296, 260 Cal. Rptr. 190. Consistent with this analysis, the *Hartford* court prorated the driver's primary insurance and the owner's excess insurance only after determining that the policies contained identical "other insurance" clauses that could not be simultaneously effectuated. Rather than suggest that *Fireman's Fund* had been overruled by the Insurance Code, the court distinguished *Fireman's Fund* on the ground that the excess insurance policy in that case purported to attach upon depletion of the *specifically mentioned* primary insurance policy, while the excess insurance policy in *Hartford* stated that it was excess to *all other* collectible insurance. *See id.* at 1301–02, 260 Cal.Rptr. 190.[10]

■ The policy of insurance issued by 20th Century to George Bane provided coverage to Mr. Bane in the use of his named vehicle or "additional insured automobiles," which it defined as other vehicles not owned by the insured, but temporarily used by him with the permission of the owner. The policy further provided (1) that if more than one policy were to apply to Mr. Bane's *insured automobile*, 20th Century would bear its proportional share with other collectable insurance, and (2) that in the use of

---

9. While the result in some of the pre–1971 cases cited would perhaps today be governed by the Insurance Code, the parties agree that the issue presented by this case is not; and as discussed above, we are not persuaded that the rules of construction employed by the courts have changed since the 1960s. Indeed, the California Supreme Court case stated by Admiral to have set out the "modern equitable method of allocating loss between primary and excess insurers," *see Olympic Insurance Co. v. Employer's Surplus Lines Co.*, 126 Cal.App.3d 593, 178 Cal.Rptr. 908 (1961), was decided in 1961, the same year that *Fireman's Fund* was decided and several years prior to *Indemnity Insurance* and *Home Indemnity*.

10. *Transport Indemnity Co. v. Royal Insurance Co.*, 189 Cal.App.3d 250, 234 Cal.Rptr. 516 (1987), advances a similar approach to insurance coverage cases. In that case, though two insurance policies provided primary coverage to a truck and attached trailer, and the Insurance Code did not explicitly determine the priority of payment between them, the court did not prorate the two policies. Rather, the court looked to the language of the coverage and the intentions of the insured and insurers in entering the contracts, to determine that one policy was designed to be primary coverage and the other excess as to the entire tractor/trailer rig. *Id.* at 252–256, 234 Cal.Rptr. 516.

an *additional insured automobile* not owned by Mr. Banes, "the insurance under this part shall be excess over other collectible insurance." 20th Century's policy in this case did not therefore provide for immediate, primary liability upon a collision involving a car driven, but not owned, by Mr. Bane.

Admiral Insurance issued to Alamo a "Certificate of Excess Insurance," which provided that "The insurance afforded by this certificate shall follow that of the primary insurance ..." The primary carrier was designated in Endorsement No. 18 as Liberty Mutual. The relevant Liberty Mutual policy includes an "other insurance" clause similar to that in 20th Century's policy, which provides that,

> "For any covered auto **you** own this policy provides primary insurance. For any covered auto **you** don't own, the insurance provided by this policy is excess over any collectible insurance.... When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total ..."

Thus, though the 20th Century policy is primary as to vehicles owned by Mr. Bane, it is, by its own terms, excess as to vehicles rented or leased by the insured. Admiral's policy, by contrast, is by its terms excess to the "primary insurer" Liberty Mutual. While the contract clause stating that "[t]he insurance afforded by this certificate shall follow that of the primary insurer" is, considered alone, ambiguous as to which primary insurer or insurers it will follow, the ambiguity is clarified by Endorsement No. 18, which specifies the relevant primary carrier to be Liberty Mutual. We thus reject Admiral's contention that its insurance contract contemplated its liability to be excess to *all* primary policies, and affirm the judgment of the district court that Admiral's policy attached upon the exhaustion of the underlying Liberty policy.

III. Did the district court err in limiting Admiral's contribution to $200,000?

The district court found Admiral liable up to $200,000, pursuant to a Stipulation of Undisputed Facts for Cross Motions for Summary Judgment submitted by the parties. The Stipulation stated that Admiral issued its certificate of excess liability insurance providing limits for permissive users and renters of Alamo vehicles in the amount of $900,000 combined single limit in excess of $100,000; and that by endorsement dated October 25, 1985, the limits of coverage were reduced to $300,000 per accident bodily injury liability, in excess of the $100,000 combined single limit bodily injury and property damage coverage provided by the Liberty policy. The district court apparently concluded on the basis of this stipulation that the October 25 endorsement limited Admiral's liability to Mr. Bane to $200,000.

20th Century appeals this finding, contending that as the endorsement was issued *after* the date of the accident, it did not effectively limit Admiral's liability. 20th Century suggests, citing *Angle v. United States Fidelity & Guaranty Co.,* 201 Cal.App.2d 758, 20 Cal.Rptr. 391 (1962), that parties to a contract of insurance may not limit an insurer's liability after the occurrence of the accident giving rise to the claim, unless grounds for reformation exist. *Angle* involved two policies of fire insurance issued on the same piece of real property, one to the secured lender and the other to the property owner. After a fire, one insurer issued a back-dated replacement policy with reduced coverage limits. The crucial issue in the case, the court explained, was whether an insurer may rescind an insurance policy after the event giving rise to the insurance liability occurred, when the effect of the rescission would be to increase the *pro rata* liability of another insurer. The court determined that an insurer may not do so, stating:

> The answer to this question depends upon a further inquiry: Does an insurance company in these circumstances have a 'right' to prorate its liability and, if so, does such right vest upon the occurrence of the event that gives rise to that liability? The answer to this further inquiry must be in the affirmative.

*Id.* at 761, 20 Cal.Rptr. 391.

The court continued,

[T]here can be no rescission where the rights of third parties would be prejudiced.... 'It is, of course, fundamental that, where the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining left to his other remedies.'

*Id.* at 763, 20 Cal.Rptr. 391 (quoting *Beckwith v. Sheldon*, 165 Cal. 319, 324, 131 P. 1049 (1913)).

The only exception to this result, the court noted, was where the contractual language misstated the understanding of the parties in entering the contract. In this situation, the parties would be permitted to reform the writing to conform to the mutual understanding, regardless of the effect on third parties. *See id.*

■ Admiral argues that this exception is not applicable to the case at bar, because "reformation was unnecessary due to the fact that the endorsement was issued to reflect the agreement of the parties to the contract." Essentially, Admiral seems to argue that because it effectively amended its policy with Alamo through the issuance of an Endorsement, the contract never required reformation. This argument does not address the question of whether the intended amendment to the contract was effective as to insurance claimants involved in accidents that occurred *before* the date of amendment, where third parties would be adversely affected by the amendment. Admiral appears to assume that because the amendment was backdated to the effective date of the policy, the amendment was effective as of this date, and thus raises no retroactivity problems. However, it cites no authority for this proposition, which is contrary to that cited above.

■ Admiral further argues that had the endorsement not been issued, reformation would have been appropriate, because "the record is void of evidence that any level of permissive user coverage other than that described in Endorsement 22 was intended by Alamo or Admiral. Indeed, to the extent Endorsement 22 may have been prepared sometime after the policy was issued, the Court can properly infer that the policy was initially mistaken as to limits provided to permissive users and that mistake was remedied by Endorsement 22." Admiral appears to conclude that without substantive evidence that Endorsement 22 did not reflect the intent of Alamo and Admiral at the time the policy was first issued, its terms must be enforced.[11]

We find Admiral mistaken as to each point. As to the first, the Stipulation submitted to the district court stated that Admiral issued a certificate of excess liability insurance with limits for permissive users of Alamo rental cars of $900,000, significant evidence of a level of coverage other than that described in Endorsement 22. As to the second point, there is absolutely no evidence before the court that the policy was initially "mistaken" as to the limits of coverage provided; indeed, none of pleadings contained a request for reformation or revision, and Admiral indicates that no discovery on this question was ever conducted. On these facts, Admiral has not raised a triable question of material fact, sufficient to withstand a motion for summary judgment by 20th Century. Finally, Admiral is mistaken that absent substantive evidence that the Endorsement did not reflect the intent of the parties at the time of the signing of the contract, the terms of the amendment must be enforced; rather, the burden is on the party seeking reformation to present clear and convincing evidence of

11. Admiral also suggests in a footnote that while each of the two first-party fire policies in *Angle* had an obligation of payment once the loss occurred, in this case the third-party payers had no obligation of payment until the time of settlement, some years after Endorsement 22 was issued. Neither party cites any authority discussing when an insurance company's obligation vests. While *Angle* does not explicitly address this issue, its analysis appears to assume that the obligations of both insurers "vested" at the time of the incident giving rise to the payment obligation, though the amount of their total liability and the respective obligations of each were not determined until several years later.

the basis for reformation.[12]

Based on the foregoing, we find that the amendment contained in Endorsement 22 did not limit Admiral's liability to $200,000.

## CONCLUSION

We affirm the district court's findings that Liberty was liable up to its policy limit of $100,000, and that 20th Century's liability was excess to Admiral's. We reverse the district court's finding that Admiral's liability was limited to $200,000, and find Admiral liable up to its policy limit of $900,-000. The case is remanded for entry of judgment consistent with this opinion.

AFFIRMED IN PART AND RE-VERSED IN PART.

---

**12.** In *Matter of Beverly Hills Bancorp,* 649 F.2d 1329, 1334 (1981), this court explained that under California law, a written instrument is presumed to express the true intent of the parties. Reformation or revision on the ground of mutual mistake requires clear and convincing evidence of the alleged mistake. Where none of the pleadings before the trial court contained a request for reformation or revision, and where reformation or revision was never raised, a conclusion could not be supported that an agreement, as written, failed to express the mutual intention of the parties.