[No. C012904. Third Dist. Dec. 23, 1992.]

SAFECO SURPLUS LINES COMPANY, Plaintiff and Appellant, v. EMPLOYER'S REINSURANCE CORPORATION, Defendant and Respondent.

**Counsel**

Greve, Clifford, Diepenbrock & Paras, Lawrence A. Wengel and Jozel L. Brunett for Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Pamela E. Cogan and Justice C. McPherson for Defendant and Respondent.

## Opinion

**SIMS, Acting P. J.**—This action for declaratory relief between two insurers involves errors and omissions insurance policies that provide coverage for claims made upon the insured. We must decide whether a claim is "made" upon an insured when a claim letter is dated by the claimant, as asserted by plaintiff Safeco Surplus Lines Company (Safeco), or when the letter is received by the insured, as maintained by defendant Employer's Reinsurance Corporation (ERC). Like the trial court, we find that a claim is not "made" until it has been received; therefore, we affirm the trial court's grant of summary judgment for ERC.

### Factual and Procedural Background

Safeco and ERC issued successive claims-made errors and omissions policies to the insured, McGee & Thielen Insurance Brokers, Inc. (McGee), a California corporation. ERC's policy was in effect from November 23, 1985, to November 1, 1989; Safeco's policy took effect on November 1, 1989. Safeco's policy provides that its coverage is excess over any other valid and collectible insurance available to McGee.

McGee acted as insurance broker for Nacht & Lewis Architects, Inc. (Nacht), one of the firms involved in the design and construction of the Sacramento County jail.

Late in 1989, Nacht's law firm (located in San Francisco) sent McGee a letter alleging that claims had been filed against Nacht for alleged design errors in the construction of the jail and tendering defense of these claims to McGee. Although the letter was dated October 27, 1989, McGee did not receive it until November 6.

McGee subsequently tendered defense of the Nacht claim to both Safeco and ERC. Safeco agreed to defend under a reservation of rights; ERC refused to defend on the ground that Nacht's claim had not been made within its policy period, which ended on November 1, 1989.

Safeco moved for a declaratory judgment as to which insurer owed McGee a defense and indemnity. Both parties thereafter moved for summary judgment on stipulated facts.

Following argument, the trial court granted ERC's motion for summary judgment and denied Safeco's motion. The court subsequently entered judgment in favor of ERC, from which Safeco now appeals.

## Discussion

A motion for summary judgment is properly granted if the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ The construction of an insurance contract is a question of law because it is based on the terms of the contract without the aid of extrinsic evidence; accordingly, we are not bound by the trial court's interpretation, but must consider the question de novo. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *McGreehan* v. *California State Auto. Assn.* (1991) 235 Cal.App.3d 997, 1000-1001 [1 Cal.Rptr.2d 235].)

■ Although ambiguities in an insurance contract must ordinarily be construed against the insurer, this rule does not apply to a dispute between two insurers over their respective liabilities. (*Hartford Accident & Indemnity Co.* v. *Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1300 [260 Cal.Rptr. 190]; see *Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 506 [99 Cal.Rptr. 617, 492 P.2d 673].)

■ In this case the parties dispute not only whether Nacht's claim against the insured was "made" within ERC's policy period, but also whether ERC's policy requires that a claim be reported to the insurer within the policy period in order to trigger coverage, and whether, if so, the notice-prejudice rule bars ERC from denying coverage on the ground that the claim was not reported to it within its policy period. ■ ■ ■ However, we need not reach the latter questions, because we find, as did the trial court, that the answer to the first question is dispositive.[1]

ERC's policy provided that the insurer agreed to pay damages for errors and omissions arising out of the insured's business "as respects claims first made against the Insured during the policy period." The policy defined "claims first made" as follows: "[T]he term 'claims first made' shall mean

---

[1]Although the trial court's order granting summary judgment to ERC does not state the reasons for the court's decision, the court made these reasons clear during the hearing on its tentative ruling.

Safeco asserts that even though the trial court did not reach the reporting and notice-prejudice issues, we must do so because we are required to make our own independent interpretation of ERC's policy and because the parties raised these issues in the underlying cross-motions. Safeco is mistaken. On review of a grant of summary judgment we will affirm if the judgment may be upheld on any ground (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709]) and if we find by independently interpreting the writing at issue that the trial court's resolution of a single question correctly decided the case we need not discuss other issues raised by the parties.

that the Insured has received notice of legal process, that *a demand for money or services has been made against the Insured,* or that the Insured has become aware of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the Insured. In the event of any such proceeding, event or development, notice must be to the Corporation during the policy period; . . ." (Italics added.)

Safeco contends that Nacht's claim against McGee was a "demand for money or services made against the Insured" and ERC does not disagree. Safeco contends further that Nacht's claim was "made" against McGee on October 27, 1989, the date shown on the letter from Nacht's attorneys to McGee—a date which falls within ERC's policy period but precedes that of Safeco. ERC disagrees. So did the trial court, and so do we.

Safeco cites no authority holding that a claim is made on the date shown on the demand letter, rather than on the date the insured receives the letter. Safeco excuses this failure by asserting that the case is one of first impression in California. Examination of the cases Safeco relies on leads to a different conclusion. Even though the narrow question posed by Safeco may not have been addressed before in a published decision, the cases Safeco cites all support the principle (which common sense would also suggest) that a claim is not "made" until the party against whom it is asserted has notice of the claim.

Safeco first cites *San Pedro Properties, Inc.* v. *Sayre & Toso, Inc.* (1962) 203 Cal.App.2d 750, 755 [21 Cal.Rptr. 844], and *Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261, 269 [134 Cal.Rptr. 427], for their interpretations of the terms "claim" and "demand." *Williamson* notes: "A 'claim' has been defined in ordinary English as 'a demand for something due or believed to be due.' (Webster's New Collegiate Dict. (7th ed. 1972) p. 152.) Each party refers to the definition of claim set forth in *San Pedro Properties,* [*supra,*] [disapproved on another issue[,] *Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 220 [110 Cal.Rptr. 139, 514 P.2d 1219]]. There the court collated definitions from prior precedents as follows: ' "The word [claim] is derived from the Latin clamor, meaning a call, a demand. In its ordinary sense the term imports the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money . . . ." [Citation.] [¶] A 'claim' refers to a debt due the claimant. [Citation.] It is a money demand. [Citation.] [¶] "Claim" means "To ask for, or seek to obtain, by . . . right, or supposed right; to demand as due." [Citation.] [¶] A claim connotes an assertion of a legal right, as distinguished from a recognition of that right. . . .' " (64 Cal.App.3d at p. 269.)

Safeco boldly asserts that the *Williamson* and *San Pedro Properties* interpretation of "claim" "logically leads to only one conclusion: that the date of the October 27, 1989, letter signifies the date of the 'demand' for money or services made against McGee & Thielen." We do not grasp the logic of Safeco's conclusion. All the operative verbs recited in the *Williamson-San Pedro Properties* definitions of "claim" necessarily imply two-party transactions. One cannot meaningfully "ask for," "seek to obtain," "demand as due," or "assert" a supposed right in a vacuum. To have a meaning, this act must have an audience. Thus the definitions cited by Safeco logically lead to the conclusion that a claim is "made" only when the party claimed against learns of the claim.

Furthermore, although the issue of when a claim is made was not presented in *Williamson* or *San Pedro Properties,* both cases contain language which undercuts Safeco's position. In *San Pedro Properties* the court noted that the claims at issue were made on the dates the parties against whom the claims were made received notice of the claims. (203 Cal.App.2d at pp. 753, 755.) Similarly, in *Williamson* the court found that the plaintiff knew of the claim against it because it had received a letter giving notice thereof. (64 Cal.App.3d at pp. 268-270.) Neither court stated or implied that the claims could have been deemed made absent such notice.

Safeco also relies on *Employers Reinsurance Corp. v. Phoenix Ins. Co.* (1986) 186 Cal.App.3d 545 [230 Cal.Rptr. 792]. Its reliance acts as a boomerang, because *Phoenix* expressly refutes Safeco's argument. In *Phoenix,* the errors and omissions policy at issue provided coverage " 'if claim is made *or suit is brought* against the insured during the policy period.' " (186 Cal.App.3d at p. 551, italics added.) Construing the underlined phrase, the court held that the filing of a suit triggered coverage even if the defendant had not yet received service or other notice of the suit. (*Id.* at pp. 554-555.) Safeco contends that the same logic applies by analogy to the phrase "claim is made." However, Safeco overlooks the fact that the defendant in *Phoenix* likewise argued the two phrases were analogous, but failed to persuade the court: ". . . [T]here is an inherent difference between the 'making' of a claim and the 'bringing' of a lawsuit. *The former, by its very nature, involves some kind of notice. The latter only requires the filing of a complaint.*" (*Id.* at p. 555, italics added.)[2]

Thus the authority Safeco relies on tells against its position. So does common sense. As ERC points out, Safeco's proposed rule is unworkable

[2]The defendant in *Phoenix* came at the question from the opposite side. Having sought to deny coverage where suit had been brought but not yet served, it argued that the phrase "suit is brought" necessarily implied the giving of notice, by analogy to the phrase "claim is made." (186 Cal.App.3d at p. 555.) However, the court's reasoning works in both directions, denying Safeco as well as the defendant in *Phoenix* the benefit of the proposed analogy.

because it could seldom if ever be proved when a claimant "made" his claim under that rule. It is common knowledge that letters do not always go out in the mail on the dates they are written or addressed. Thus a rule that looked only to the timing of the claimant's actions would introduce an intolerable element of uncertainty which the correct rule avoids.

In its reply brief Safeco asserts that ERC, having failed to include a receipt requirement in the language of its claims-made policy, is now trying to rewrite the policy by "reading in" such a requirement. In support of this contention Safeco cites cases from various foreign jurisdictions in which the claims-made policy provisions expressly referred to "the *receipt* of a demand for money or services" by the insured, unlike the corresponding provision of ERC's policy. (*Rentmeester* v. *Wisconsin Lawyers Mut.* (1991) 164 Wis.2d 1 [473 N.W.2d 160, 163], italics added; *Hofing* v. *CNA Ins. Companies* (1991) 247 N.J.Super. 82 [588 A.2d 864, 867]; *Buckhannon-Upshur Cty. Airport* v. *R&R Coal* (W.Va. 1991) 413 S.E.2d 404, 408; *McFarland* v. *Sauvinet* (La.Ct.App. 1988) 525 So.2d 686, 688.) However, as we have explained, ERC's interpretation of its policy "reads in" nothing, but simply construes the policy according to the logical implications of its terms. The fact that other insurance policies have incorporated an express reference to the insured's receipt of a demand for money or services does not prove that an insurer must make such express reference to establish the requirement of receipt.

Here, a "demand for money or services" was made on November 6, 1989, when McGee received the letter from Nacht's law firm. The demand was made during Safeco's (but not ERC's) coverage.

The trial court properly granted summary judgment.

DISPOSITION

The judgment is affirmed.

Davis, J., and Nicholson, J., concurred.