**FREMONT INDEMNITY COMPANY, INC., Plaintiff,**

v.

**CALIFORNIA NATIONAL PHYSICIAN'S INSURANCE COMPANY, Defendant.**

No. 96–7724 JGD (SHx).

United States District Court,
C.D. California,
Western Division.

Jan. 8, 1997.

Kroll & Tract, Los Angeles, CA, for Plaintiff.

Roland C. Colton and Grant Puleo, Del Mar, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVIES, District Judge.

On December 9, 1996, defendant's Motion to Dismiss pursuant to Federal Rule 12(b)(6) came on for hearing. During oral argument, counsel for both parties acknowledged that all of the facts were before the court and requested that the Motion to Dismiss be treated as a Motion for Summary Judgment. Considering the Motion as such, the Court hereby GRANTS the Motion for Summary Judgment for the reasons set forth below.

### Factual Background

On November 4, 1996, this case was removed pursuant to 28 U.S.C. § 1441 from the Superior Court of the State of California for the County of Los Angeles because of diversity of citizenship.

On October 2, 1996, Plaintiff Fremont Indemnity Company ("Fremont") filed a Complaint for Declaratory Relief, Equitable Indemnity, and Contribution. Fremont is a corporation authorized to conduct insurance business in California. Defendant California National Physician's Insurance Company ("CNP") is also authorized to conduct insurance business in California.

The Complaint makes the following allegations. Fremont issued a claims-made medical professional liability policy to Dennis R. Gumm, D.P.M., a podiatrist. The policy was in force for one year, from November 1, 1991 until November 1, 1992. Then, on November 1, 1992, CNP issued a similar claims-made policy to Dr. Gumm, which was in force for two years, from November 1, 1992 until November 1, 1994. Both policies carried a retroactive date of November 1, 1977.

In January 1992, while the Fremont policy was in force, Dr. Gumm received a ninety day "notice of intent to sue" letter from Ashtonell Smith ("Smith"), a patient. Smith sent the letter in accordance with section 346 of the California Code of Civil Procedure which governs medical malpractice claims.

The letter is in effect notice of a legal claim against a medical practitioner. The letter, dated January 27, 1992, stated Smith's intent to sue in 90 days for alleged medical negligence related to two surgeries performed by Dr. Gumm in January and March of 1991. On January 29, Dr. Gumm forwarded the letter to the broker, Serta Company. Serta Company forwarded the letter to Fremont on February 13, 1992. Fremont received no notice of any further activity with respect to the contents of the letter prior to the termination of the Fremont policy on November 1, 1992.

Nevertheless, on March 25, 1992, Smith had filed suit against Dr. Gumm. However, Dr. Gumm was not served with the summons and complaint until December 27, 1993. At this time, the Fremont policy had terminated and the CNP policy was in force.

Upon receiving notice of the lawsuit, CNP retained counsel to defend Dr. Gumm. Approximately one year later, on November 11, 1994, and again on February 22, 1995, CNP's appointed defense counsel wrote to Fremont, requesting that Fremont assume responsibility for Dr. Gumm's defense. Thereafter, Fremont agreed, and CNP withdrew its defense of Dr. Gumm.

A few months later, on July 12, 1995, Fremont advised CNP by letter that Fremont believed that CNP was obligated to contribute pro-rata to the defense and indemnity of Dr. Gumm. CNP declined to participate. On September 11, 1995, Fremont again wrote to CNP to request contribution. Fremont received no response from CNP. On December 14, 1995, Fremont sent another letter to CNP. With the letter, Fremont enclosed a copy of the Fremont policy and set forth the basis for its request that CNP participate in the defense and indemnification of Dr. Gumm. Again, Fremont received no response from CNP.

Consequently, Fremont filed the instant action against CNP seeking declaratory relief regarding the respective rights and obligations of the parties in connection with the Smith claim. Specifically, Fremont requests that the Court make a binding determination regarding CNP's duty to contribute to the cost of defending Dr. Gumm and to any settlement or judgment that Fremont may be required to pay on behalf of Dr. Gumm. Fremont also requests equitable indemnity and equitable contribution from CNP relating to the same.

### Discussion

### I. Declaratory Relief

■ Initially, the Court must determine whether declaratory relief is appropriate in the instant action.

The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

■ In declaratory judgment actions, the parties' dispute must be of "sufficient immediacy and reality" to constitute a "controversy" in the constitutional sense and justify exercise of federal judicial power under the Declaratory Judgment Act. *Societe de Conditionnement v. Hunter Engineering*, 655 F.2d 938, 942 (9th Cir.1981). "The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment once the adverse positions have crystallized and the conflict of interest is real and immediate." *Id.* at 943.

In the instant action, the Complaint states Fremont's allegation that CNP is obligated by the terms of the policy it issued to Dr. Gumm to defend Dr. Gumm and to pay any judgment or settlement in relation to the Smith claim. In response to this allegation, CNP takes the position that the terms of its policy are clear, and no coverage exists in relation to the Smith claim. Thus, an actual controversy exists between the parties making declaratory relief appropriate.

**1402**

## II. *Summary Judgment Standard*

The Federal Rules of Civil Procedure provide for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court clarified the standard for summary judgment in three important cases. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industry Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Whether a fact is material is determined by looking to the governing substantive law; a fact is material if it may affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54; *see also* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial §§ 14:123–141 (1993).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party, when appropriate, if that party does not present these specific facts. *Id.*

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (*citing Adickes v. S.H. Kress and Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. at 2512. As the Court explained in *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

However, an alleged "genuine issue" will not defeat summary judgment where the factual context makes the non-movant's allegations implausible. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). Consequently, where the factual context makes the non-movant's claim implausible, the non-movant "must come forward with more persuasive evidence to support their claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Id.*

## III. *Claims-made Insurance Policies*

Both the Fremont and CNP policies are claims-made insurance policies. In general, a claims-made professional liability insurance policy covers claims brought against the insured while the policy is in effect. *Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co.,* 44 Cal. App.4th 1297, 1300, 52 Cal.Rptr.2d 268. "Under a claims-made policy, the carrier agrees to assume liability for any acts or omissions, even those made prior to the inception of the policy, as long as notice is given, or a claim is made within the policy period." *Gilliam v. American Cas. Co. of Reading, Pennsylvania,* 735 F.Supp. 345, 349 (N.D.Cal.1990). Unless otherwise defined in

the policy, a "claim" is a demand for something as a matter of right or as due. *Williamson & Vollmer Engineering v. Sequoia Ins. Co.*, 64 Cal.App.3d 261, 269, 134 Cal. Rptr. 427 (1976). A claim is made upon an insured when the insured receives it or has notice of it. *Safeco Surplus Lines Co. v. Employer's Reinsurance Corp.*, 11 Cal. App.4th 1403, 1407, 15 Cal.Rptr.2d 58 (1992). In the case at hand, neither party disputes that the "notice of intent to sue" letter received by Dr. Gumm constitutes a claim.

The claims-made policies at issue in the instant case contain a retroactive date of November 1, 1977. The retroactive date restricts the scope of coverage to exclude coverage for claims arising from wrongful acts occurring prior to November 1, 1977. The surgeries giving rise to Smith's claim against Dr. Gumm took place in January and March of 1991. Thus, the retroactive date is not significant to this action.

Finally, both policies also contain "other insurance" clauses. An "other insurance" clause attempts to limit the insurer's liability where the insured has other insurance that covers the same risk. The clause attempts to control the manner in which each "at risk" insurer contributes to or shares a loss. *Fire Ins. Exch. v. American States Ins., Co.*, 39 Cal.App.4th 653, 659, 46 Cal.Rptr.2d 135. In this case, neither party's "other insurance" clause is at issue because both policies are not at risk. As discussed below, CNP's policy is not liable on the Smith claim. Thus, Fremont's "other insurance" clause is not triggered.

## IV. *Analysis*

CNP moves for summary adjudication of its contention that there is no coverage of the Smith claim under the terms of the CNP policy. In response, Fremont argues that CNP is liable for coverage on a pro-rata basis according to the terms of the CNP policy. In support of its argument, Fremont points to the CNP policy provision that indicates the applicable period of coverage. It should also be noted that the Fremont policy contains an identical provision. Exhs. A and B, Notice of Lodgement.

The relevant policy language is as follows:

PERIOD OF COVERAGE

... This insurance applies only to professional services rendered ... after the retroactive date stated in the Declarations and then only if a claim is first reported during the policy period.

NOTICE

Except to such extent as may otherwise be provided herein, the coverage of this policy is limited to liability for only those claims which arise from incidents occurring subsequent to the retroactive date stated in the Declarations Insert and which are first made by or on behalf of an Injured party against the Insured while this policy is in force.

The specific language at issue is the phrase "first reported". CNP argues that the meaning of the words is clear; its policy does not provide coverage of a claim which has been reported prior to the commencement of its policy. In opposition, Fremont offers three arguments.

First, Fremont argues that the phrase simply emphasizes the requirement that the insured report the claim to CNP before coverage is triggered; if the insured does not report the claim at all, the policy will not apply. Second, Fremont argues that the phrase "first reported" is ambiguous because it is capable of more than one meaning. As such, Fremont contends the provision should be construed against CNP and in favor of granting coverage under the CNP policy. Third, Fremont argues that if CNP intended to draft its policy to apply only if the claim had not previously been reported to a prior carrier, it could have done so by including a prior acts exclusion in its policy.

None of Fremont's arguments succeed in convincing the Court that genuine issues of fact exist as to whether CNP is liable for pro-rata coverage on the Smith claim.

### A. *Notification*

Fremont contends that the language "first reported" merely articulates the requirement that the insurer be notified of the claim before coverage under the policy is activated. Basic rules of contract interpretation require

that the reader give effect to all of the words making up a particular provision of the contract. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." *Rest.2d., Contracts,* § 203(a). According to Fremont's interpretation of the meaning of "first reported", it makes no difference whether the word "first" is kept in or left out of the sentence. Whether the sentence states "first reported" or merely "reported", the meaning is the same. That is, as Fremont argues, a claim must be reported to the insurer during the policy period before coverage will apply. This interpretation is necessarily incorrect as it renders the word "first" superfluous.

In contrast, CNP's interpretation of the provision only makes sense if all of the words are given effect. The definition of "first" is "preceding all others in time, order, or importance; earliest". *Webster's Ninth New Collegiate Dictionary* (1985 Edition). Substituting this definition into the sentence clarifies the meaning, i.e. the "earliest reporting" of a claim must occur during the policy period. Thus, it is clear that the word "first" was written into the provision to restrict coverage to those claims which were reported for the first time during the applicable policy period.

■ Applying the policy provision to the situation at hand, it is apparent that the CNP policy does not provide coverage for the Smith claim. The undisputed facts show that the claim was first reported to Fremont in January 1992 when Dr. Gumm forwarded the "notice of intent to sue" letter to Serta Company which in turn forwarded it to Fremont. This notification was the first reporting of the claim. Thus, according to the terms of both parties' policies, Fremont, not CNP, is liable for coverage on the claim.

■ Nevertheless, Fremont argues that CNP admitted liability under the policy in that it defended Dr. Gumm for over a year before tendering the defense to Fremont. While the actions of a party to a contract, subsequent to the formation of the contract, may be looked upon in determining the meaning of the contract, such actions are not necessarily conclusive of meaning. *Rest.2d., Contracts* § 202(4), comment g. In the situation at hand, Dr. Gumm was served with the summons and complaint while the CNP policy was in force. CNP, believing it was liable under its policy, appointed counsel to defend Dr. Gumm. Upon investigation, however, CNP apparently discovered that Dr. Gumm had received the required ninety day notice of intent to sue while the Fremont policy was in effect. At that point, CNP relegated Dr. Gumm's defense to Fremont, the insurer to whom the claim was first reported, in accordance with the terms of both insurers' policies. Thus, in this situation, the actions of CNP are not indicative of any alternative meaning of the policy provision.

### B. *Ambiguity*

Next, Fremont argues that the provision is ambiguous and should be construed against CNP, the drafter. In interpreting an insurance policy, some actual or apparent ambiguity must be present before a court will construe a policy provision against its drafter. *Pacific Employers Ins. Co. v. Superior Court,* 221 Cal.App.3d 1348, 1355, 270 Cal. Rptr. 779 (1990)(*citing Johnson v. Continental Ins. Companies,* 202 Cal.App.3d, 477, 481, 248 Cal.Rptr. 412 (1988) which held that provision in claims-made policy providing that claims must be made and reported during policy period was not ambiguous). Moreover, such ambiguity "cannot be based on a strained interpretation of the policy language." *Pacific Employers* at 1357, 270 Cal. Rptr. 779 (*quoting Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986)).

Here, the CNP policy affords coverage only for claims "first reported during the policy period". On its face, the language is not ambiguous. "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Pacific Employers* at 1359, 270 Cal.Rptr. 779 (*quoting National Ins. Underwriters v. Carter,* 17 Cal.3d 380, 386, 131 Cal.Rptr. 42, 551 P.2d 362 (1976)). Moreover, there is a material difference between a claims-made policy and an occurrence policy.

Coverage under a claims-made policy is evoked upon the insured's transmittal of notice of a claim to the insurer, even if the act giving rise to the claim occurred outside of the policy period. Keeping this distinction in mind, it is apparent that the provision "first reported" unambiguously means that coverage applies only when a claim is reported for the first time during the applicable policy period. The meaning introduced by Fremont runs contrary to the entire concept of insurance which is protection from a specified, but not yet realized loss. Accordingly, the Court rejects Fremont's argument that "first reported" is ambiguous in that the argument is based on a strained interpretation of the policy language.

### C. *Prior Acts*

Last, Fremont contends that CNP would have included a prior acts exception in its policy in order to exclude coverage of a claim if the claim was previously reported to a prior carrier. This contention is inapposite. A prior acts exclusion refers to the exclusion of claims arising from acts occurring prior to the policy period. *Merrill & Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal.App.3d 624, 629, 275 Cal.Rptr. 280. This type of policy is not at issue since the coverage period of both policies clearly extends to acts occurring after the retroactive date of November 1, 1977. Accordingly, the Court finds this argument to be meritless and insufficient to defeat summary judgment.

### V. *Conclusion*

At the hearing on the motion to dismiss, the parties acknowledged that all of the facts were before the Court and requested that the Court consider the motion to dismiss as a motion for summary judgment. As the moving party, CNP has the burden of demonstrating the absence of a genuine issue of material fact for trial. The undisputed facts show that Dr. Gumm reported the Smith claim to Fremont during the Fremont policy period. The language of the CNP and Fremont policy provisions call for a claim to be "first reported during the policy period" for coverage to apply. The Court finds, as a matter of law, that this language is not am-

biguous, and clearly states the reporting requirement necessary to trigger coverage under the policy. Accordingly, CNP has met its burden.

In response, Fremont has not set forth any specific facts showing the existence of a genuine issue of fact for trial. Thus, the Court hereby grants the motion for summary judgment in favor of CNP.

IT IS SO ORDERED.