Filed 6/25/13  Evanston Ins. v. 155 Hamilton Development CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>    Cross-complainant and Appellant,<br><br>    v.<br><br>155 HAMILTON DEVELOPMENT, LLC et al.,<br><br>    Cross-defendants and Respondents. | B243145<br><br>(Los Angeles County<br>Super. Ct. No. BC447544) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Deirdre Hill, Judge.  Affirmed.

Manning, Kass, Ellrod, Ramirez, Trester, John M. Hochhausler and Ladell Hulet Muhlestein for Cross-complainant and Appellant.

James Mortensen for Cross-defendants and Respondents.

The issue presented in this insurance coverage action is whether a claim was "received" by an insured corporation within the meaning of a "claims made" insurance policy before the date on which the policy was cancelled. The trial court interpreted the term "received by the insured," which was undefined in the policy, to mean that a claim letter was deposited in the mailbox at the insured's place of business. Applying the presumption accorded by Evidence Code section 641, the trial court then found that two claim letters sent by first class mail to the insured's address of record was received by the insured before the policy cancellation date, despite testimony by the insured's sole employee that he did not see either letter until after the instant lawsuit commenced. The trial court concluded that the claim was covered under the policy and on that basis entered judgment against the insurer. We affirm the judgment.

## BACKGROUND

**The parties**

Appellant Evanston Insurance Company (Evanston) issued a professional liability insurance policy to Greg Riley, P.E., The Structural Engineering Consultants, Inc. (SEC) as the named insured. Greg Riley (Riley) was the principal engineer, owner, and president of SEC. SEC performed structural engineering services for respondents 155 Hamilton Development, LLC and 155 Hamilton, Ltd. (collectively, Hamilton) at a condominium project being developed by Hamilton in Beverly Hills (the project).

**The policy**

The professional liability insurance policy issued by Evanston to SEC (the policy) provides indemnity coverage and defense against claims made during the policy period of June 1, 2007 to June 1, 2008. The policy was cancelled effective March 21, 2008 because SEC defaulted on a loan that funded the policy premiums.

The policy's insuring provision provides in relevant part:

> "The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount . . . , which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period . . . and reported to the Company . . . , by reason of a Wrongful Act . . . ."

2

The policy defines "Claim" as follows: "Claim means a written demand received by the Insured for money or remedial Professional Services involving this policy . . . ."

**The claim and underlying action**

During the summer of 2007, Hamilton discovered structural problems in the project. Hamilton notified SEC, and SEC prepared plans to address those problems.

In July 2007, SEC relocated its offices from 27200 Tourney Road, Suite 390, in Valencia, California, 91355, to a new location, also in Valencia and within the same zip code, at 25115 Avenue Stanford, Suite B-125. At the time SEC moved its offices, it placed a mail forwarding order with the post office, requesting that mail be forwarded from the Tourney Road address to the new address on Avenue Stanford. SEC thereafter received forwarded mail at the Avenue Stanford address.

In the fall of 2007, SEC began experiencing financial difficulties. By February 2008, SEC had laid off all of its employees except Riley.

In March and April 2008, Hamilton sent four letters to SEC informing SEC that structural problems at the project had resulted in increased costs ranging from $700,000 to $1 million, and asking SEC to put its insurance company on notice of the claim. The letters, dated March 10, 2008, March 15, 2008, March 27, 2008, and April 29, 2008, were sent by Hamilton's attorney via first class mail to SEC's Tourney Road address, which was the address then listed for SEC on its own website and on the website for the California Secretary of State. None of the four letters was returned to Hamilton by the postal service as undeliverable.

Of the four letters sent by Hamilton's attorney, only the April 29, 2008 letter was seen by Riley before the instant lawsuit commenced. Riley saw the April 29, 2008 letter in early May 2008, at SEC's new address on Avenue Stanford. The April 29, 2008 letter had arrived by mail at the Avenue Stanford address, even though it was addressed to SEC's former Tourney Road address.

Hamilton sued SEC in October of 2009 for engineering defects in the project (the underlying action). SEC tendered the lawsuit to Evanston, who notified SEC on November 9, 2009, that no coverage was available under the policy.

3

SEC filed for bankruptcy on December 29, 2008. Hamilton obtained an order from the bankruptcy court lifting the automatic stay so that it could proceed in the underlying action for purposes of collecting insurance proceeds available to SEC.

**The instant action**

SEC filed the instant declaratory relief action against Evanston, seeking a determination that SEC had no coverage available to it under the policy but that Evanston owed SEC a duty to defend the underlying action until the trial court issued its decision regarding coverage under the policy. In its complaint, SEC alleged that it received Hamilton's claim in early May 2008, more than a month after the policy had been cancelled. Evanston filed a cross-complaint for declaratory relief against SEC and Hamilton seeking a determination that the underlying action was not covered under the policy.

**The trial**

The matter proceeded to a court trial. For purposes of the trial, the parties agreed and stipulated that the policy was cancelled on March 21, 2008, for SEC's nonpayment of the policy premium and that no claim received by SEC on or after that date could be considered timely under the terms of the policy. The parties further stipulated that Evanston had received notice of Hamilton's claim "as soon as practicable," as required under the policy, and that the sole basis for rejecting the claim was Evanston's contention that the claim was not received by SEC prior to the policy cancellation date.

At the trial, Hamilton's attorney, James Mortensen, testified he sent four letters to SEC notifying SEC of construction defects in the project and asking SEC to contact its insurance carrier. The letters, dated March 10, March 15, March 27, and April 29, 2008, were sent by first class mail to the address listed for SEC on its own website and on the website for the California Secretary of State, and were mailed either on the date indicated on the letter or the following day. None of the letters was returned as undeliverable.

Riley testified that SEC filed a mail forwarding order with the post office in July 2007 when SEC moved its office from Tourney Road to Avenue Stanford. SEC thereafter began receiving mail at the Avenue Stanford address which had been

4

forwarded from the former Tourney Road address. Riley further testified that of the four claim letters sent by Hamilton's counsel to SEC, the April 29, 2008 letter was only one he saw before the instant litigation commenced. The April 29, 2008 letter arrived by mail at SEC's Avenue Stanford address and Riley opened the letter in early May 2008. Because of SEC's financial difficulties, Riley was the sole remaining employee at SEC after February 2008 and the only person who would thereafter open SEC's mail. Riley described conditions at SEC at that time as chaotic and admitted that mail may have remained unopened for months. Riley further testified he did not know whether any of Hamilton's previous claim letters dated March 10, 15, or 27, 2008 had been delivered to SEC's Avenue Stanford address.

Evanston's claims manager, Melanie Brown, testified that the term "received by the Insured" as used in the policy can have several meanings. Brown agreed the term could mean deposit of a sealed claim letter in the mailbox at the insured's office. Brown further agreed that the insured would not have to open a sealed claim letter deposited in the insured's mailbox and read the contents of the letter in order to be deemed to have received the claim.

At the conclusion of the trial, the trial court found that Hamilton sent four claim letters on or within a day of March 10, 15, 27 and April 29, 2008, by first class mail to SEC at its Tourney Road address, which was SEC's then address of record with the California Secretary of State's office. Applying the presumption accorded by Evidence Code section 641, the trial court then found that it was more likely than not that Hamilton's claim letters dated March 10, 2008 and March 15, 2008, were received by SEC in the ordinary course of mail before the March 21, 2008 policy cancellation date. That presumption, the trial court found, was not rebutted by any evidence produced by Evanston. The trial court concluded that Hamilton's claim letters were properly addressed to SEC's Tourney Road address because Hamilton was entitled to rely on that address as SEC's address of record listed with the California Secretary of State and on SEC's own website. The trial court further found that it was "probable" that Hamilton's March 10 and March 15, 2008 letters were delivered by mail to SEC's Avenue Stanford

address before the March 21, 2008 policy cancellation date because both the Avenue Stanford and the Tourney Road addresses were located within the same zip code and the forwarding process would not have resulted in any significant delay in the delivery of forwarded mail. The trial court concluded that the term "received" by the insured was ambiguous, and that the term could reasonably be interpreted to mean deposit in SEC's mailbox, either at the former Tourney Road address or at the subsequent Avenue Stanford address.

The trial court ruled that the claim was covered under Evanston's policy and entered judgment against Evanston. This appeal followed.

## EVANSTON'S CONTENTIONS

Evanston contends the trial court erred as a matter of law by concluding that deposit of Hamilton's claim in SEC's mailbox, without SEC's awareness of the claim, was a claim "received by the Insured" within the meaning of the policy. Evanston further contends the trial court erred by applying Evidence Code section 641, and that absent the presumption accorded by that statute, there was insufficient evidence to sustain Hamilton's burden of proving that a claim was timely received.[1]

## DISCUSSION

### I. Interpreting the policy language

#### A. General principles

The principles applicable to the interpretation of an insurance policy are the same as those that govern the interpretation of contracts generally. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) The parties' mutual intention at the time the contract is formed governs interpretation. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821.) "If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' [Citation.] [¶] When interpreting a policy provision, we must give its terms their

---

**1**     Evanston's appeal initially challenged the trial court's determination that Evanston owed SEC a duty to defend the underlying action; however, Evanston withdrew this challenge after certain settlements rendered the issue moot.

"'ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage."' [Citations.] We must also interpret these terms 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' [Citations.]" (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.) "'A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.' [Citation.]" (*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 147 Cal.App.4th 137, 146.)

### B. The meaning of "received by the Insured"

The policy does not define the term "received by the Insured." The term may reasonably be construed to have several different meanings, as evidenced by the different interpretations advanced by the parties in this case. The trial court interpreted the term to mean deposit by the postal service in the mailbox at SEC's place of business. This interpretation is supported by the testimony of Evanston's own claims manager, Melanie Brown, who agreed that the term "received by the Insured," as used in the policy, can have several meanings, including deposit of a claim letter in the insured's mailbox. Brown also confirmed that a claim letter deposited in the insured's mailbox would be deemed "received" under the policy whether or not the insured opened the letter and became aware of its contents.

Evanston claims that Brown's testimony was an inadmissible legal conclusion. Evanston raised no objection to this testimony in the trial court below, however, and therefore forfeited the right to challenge its admissibility on appeal. The record shows that the trial court sustained Evanston's objection to the following question by Hamilton's counsel to Brown, before Brown responded to the question, on the ground that it called for a legal conclusion: "So that would mean that if the letter of March 15th hit Mr. Riley's mailbox before March 21st, 2008, a valid claim would have been stated?" Hamilton's counsel then rephrased the question and obtained the following response from Brown, without any objection:

7

"Q: If the letter of March 15th had hit Mr. Riley's mailbox before March 21st of 2008, for Evanston's purposes it would be considered that Mr. Riley and SEC had received notice of the claim within the policy period?

"A: Yes."

Hamilton's counsel also elicited the following testimony from Brown, without any objection from Evanston:

"Q: If the letter, the envelope, the sealed envelope containing the claim is placed in the mailbox of the insured's office or residence or whatever the address is, does that not also constitute a receipt of the letter, receiving the letter?

"A: That would constitute receipt of a letter."

The foregoing testimony was admissible to show Evanston's claim handling procedures.

Evanston argues that the term "received by the Insured" must be more narrowly interpreted to mean receipt by an individual, in this case Riley, SEC's only employee at the time Hamilton's letters were posted. Evanston further argues that in order for the claim to have been "received" by SEC, Riley not only had to physically receive Hamilton's claim letter, he must also have opened the letter and had actual notice of its contents. As support for its interpretation, Evanston relies on *Safeco Surplus Lines Co. v. Employers' Reinsurance Corp.* (1992) 11 Cal.App.4th 1403 (*Safeco*) and *Bonzer v. City of Huntington Park* (1993) 20 Cal.App.4th 1474 (*Bonzer*). As we discuss, neither case supports Evanston's position.

### 1. *Safeco and Bonzer* are distinguishable

*Safeco* involved a declaratory relief action between two insurers, Safeco and ERC, each of whom had issued a "claims made" liability insurance policy to the same insured, but for different consecutive policy periods. At issue in that case was whether a third party claim against the insured was "a claim first made" against the insured on October 27, 1989, the date shown on the demand letter, and therefore covered under ERC's policy, or on November 6, 1989, the date the insured received the letter, and therefore

8

covered under Safeco's policy. (*Safeco, supra*, 11 Cal.App.4th at p. 1407.) ERC's policy defined "claims first made" to mean "'that the Insured has received notice of legal process, that *a demand for money or services had been made against the Insured*, or that the Insured has become aware of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the Insured. . . .'" (*Ibid.*)

The court in *Safeco* concluded that the claim was "made" on the date the insured received the demand letter, not on the date indicated on the letter, and was therefore covered under Safeco's policy and not ERC's. (*Safeco, supra*, 11 Cal.App.4th at p. 1407.) The court reasoned that case law as well as "common sense" supported the principle "that a claim is not 'made' until the party against whom it is asserted has notice of the claim." (*Ibid.*) The court in *Safeco* noted that definitions of the term "claim," collected in prior case law, including to "ask for," "seek to obtain," "demand as due," or "assert" "necessarily imply two-party transactions." (*Id.* at p. 1408.) The court concluded that the definitions "logically lead to the conclusion that a claim is 'made' only when the party claimed against learns of the claim." (*Ibid.*)

*Safeco* is distinguishable in several respects. Unlike the instant case, in *Safeco* there was no dispute as to when or whether the insured received the claimant's demand letter. The court in *Safeco* accordingly did not address the factual issue of whether the insured had received the demand letter.

The policy language considered by the court in *Safeco* also differs from the relevant language in Evanston's policy. The policy in *Safeco* defined "claims first made" to include "a demand for money or services" that "*has been made* against the Insured." (*Safeco, supra*, 11 Cal.App.4th at p. 1407.) The definition also included the insured's awareness of a claim or potential claim: "'[T]he term "claims first made" shall mean . . . that the Insured has become *aware* of a proceeding, event or development which has resulted in or could in the future result in the institution of a claim against the Insured. . . .'" (*Id.* at pp. 1406-1407, italics added.) The language of the policy was thus consistent with the *Safeco* court's conclusion that a claim could not be "made" against the

9

insured until it became aware of the claim. In contrast, there is nothing in Evanston's policy that suggests the insured's knowledge or awareness of a claim is required for the claim to be "received by the Insured." Evanston's policy defines "claim" simply as "a written demand *received by* the Insured." (Italics added.) It makes no reference to the insured's awareness of the claim.

For the foregoing reasons, *Safeco* is distinguishable from the instant case. The *Safeco* court's conclusion that a claim is "made" against an insured only when the insured has notice of the claim was not intended to apply to the circumstances presented here.

Evanston's argument that the term "received by the Insured," when the insured is a corporation, can only mean receipt by an individual authorized to act for the corporation is inconsistent with the language of the policy, which does not require that a claim be received by an individual representative of the insured. Such an interpretation would effectively require personal service of claims asserted against an insured corporation or other form of business entity. Corporations, like individuals, can "receive" claims and demand letters by mail. Nothing in Evanston's policy suggests otherwise.

Evanston cites *Bonzer* as further support for its argument that an actual notice standard should apply when determining whether a claim was received by the insured. That case, too, is factually distinguishable. In *Bonzer*, the respondent's counsel mailed notice of a hearing on a petition for writ of mandate to the City of Huntington Park. (*Bonzer, supra*, 20 Cal.App.4th at p. 1477.) When no representative for the City appeared at the hearing, an order was entered against the City. The City then filed an unsuccessful motion for relief under Code of Civil Procedure section 473, supported by six uncontested declarations that no notice of the hearing had been received. (*Ibid.*) The Court of Appeal reversed, finding the City's six unimpeached and uncontested declarations that it had not received any notice of the hearing rebutted any presumption accorded by Evidence Code section 641. In light of those declarations, the court in *Bonzer* concluded that any inference that the notices were actually received was inappropriate as a matter of law. (*Bonzer*, at p. 1481.)

10

Here, in contrast, Riley did not testify that Hamilton's letters were not received at SEC's Avenue Stanford address; he could only state that he had not seen the letters. He also admitted that conditions at SEC were chaotic at the time and that he may not have attended to the mail that was delivered for months. In light of the evidence, the trial court did not err by concluding that Riley's testimony was insufficient to rebut the Evidence Code section 641 presumption that Hamilton's letters were received by SEC. Moreover, Riley's admissions regarding the chaotic state of SEC's affairs at the time the letters were posted are sufficient to support the inference that the letters were received but overlooked, forgotten, or misplaced. *Bonzer* does not compel a finding to the contrary.

## 2. Construing ambiguities against the insurer

Evanston argues that the trial court's interpretation of the policy language is unfair to insureds generally because an insured who receives a claim in the mail but does not have actual notice of the claim and cannot report it to the insurer in a timely manner will forfeit coverage under its policy. Evanston further argues that the "deposit-without-awareness" interpretation adopted by the trial court precludes an insured from ever rebutting the presumption accorded by Evidence Code section 641, because a recipient can never testify that a letter was not deposited in its mailbox.

The mailbox rule applied by the trial court in this case benefits both the insurer and the insured by setting a uniform standard, thereby enabling the parties to determine with greater certainty whether and when a claim has been "received" by the insured. A claim is presumed "received" when delivered in the ordinary course of mail, unless rebutted by evidence to the contrary. Evanston's argument that this presumption can never be rebutted is contradicted by case authority on which Evanston itself relies. As discussed, the court in *Bonzer* found that six uncontroverted and unimpeached declarations produced by the alleged recipient that a notice of hearing sent by mail was never received was sufficient to rebut any presumption accorded by Evidence Code section 641 and to preclude any inference that the notice had been delivered. (*Bonzer, supra*, 20 Cal.App.4th at p. 1481.) Evanston's proposed standard, based on the insured's

11

actual knowledge of the claim, does not benefit SEC in the instant case, and we are not persuaded that it benefits insureds generally.

## II. Whether Hamilton's claim was timely received by SEC

Evanston contends the trial court erred by applying Evidence Code section 641 because the statute does not apply to forwarded mail and because the statutory requirements were not met. Evanston further contends the statutory presumption, even if applicable, was rebutted. Finally, Evanston argues that the presumption, even if not rebutted, does not establish that the letters were delivered before the policy cancellation date.

### A. *Evidence Code section 641*

Evidence Code section 641 states: "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." The presumption accorded by Evidence Code section 641 is one that affects the burden of producing evidence. It requires the trier of fact to assume a letter correctly addressed and properly mailed was received unless and until evidence is introduced to support a finding that it was not. (Evid. Code, § 604.) The presumption may be rebutted by contradictory evidence; however, the statute does not prohibit the trier of fact from drawing appropriate inferences from the same circumstances that gave rise to the presumption. (*Ibid*.; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.)

We agree with the trial court's conclusion that Hamilton's claim letters were correctly addressed to SEC at the Tourney Road address because Hamilton was entitled to rely on SEC's then address of record listed with the California Secretary of State and on SEC's own website. Hamilton's demand letter was not, as Evanston argues, "incorrectly" addressed to the only address for SEC publicly available at the time. Evidence Code section 641 contains no exception for forwarded mail, and Evanston cites no authority creating such an exception. The statutory presumption that a letter correctly addressed and properly mailed has been received by the addressee may include mail that is forwarded to the addressee "in the ordinary course of mail." (Evid. Code, § 641.) The trial court did not err by concluding that Evidence Code section 641 created a rebuttable

presumption that one or both of Hamilton's letters dated March 10 and March 15, 2008, were "received" by SEC in the ordinary course of mail.

Riley's testimony that he did not see Hamilton's March 10 and March 15, 2008 claim letters until sometime in 2010 is insufficient to rebut the presumption that SEC received those letters. Riley did not deny receiving the letters, nor could he make such a denial because he did not know whether or not the letters had been delivered to SEC's Avenue Stanford address. (Compare *Savarese v. State Farm Mut. Auto Ins. Co.* (1957) 150 Cal.App.2d 518, 521 [insured's statement that he never received written notice from insurance company was sufficient to prove document was never mailed] with *Colleen M. v. Fertility & Surgical Associates of Thousand Oaks* (2005) 132 Cal.App.4th 1466, 1478-1480 (*Colleen M.*) [attorney's testimony that he was "never aware or made aware" of subpoena served by mail was insufficient to rebut presumption accorded by Evidence Code section 641 that documents were received at the attorney's office in the ordinary course of mail].)

Riley testified that he was the only person who would have opened SEC's mail in March 2008; he admitted that conditions at SEC were chaotic at that time; and he could not deny that mail may have sat unopened for months. From this evidence, the trial court could reasonably infer that Hamilton's March 10 and March 15, 2008 letters were delivered to SEC at the Stanford Avenue address in the ordinary course of mail but that the letters were overlooked or misplaced given the chaotic circumstances at SEC's offices at that time. (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358 ["Where statement of decision sets for the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision"].)

### B. Substantial evidence of delivery before March 21, 2008

There is substantial evidence to support the trial court's finding that it was more likely than not that Hamilton's letters dated March 10 and March 15, 2008, were received

by SEC before the March 21, 2008 policy cancellation date.**2** Hamilton's attorney testified that he sent letters dated March 10, March 15, March 27, and April 29, 2008, to SEC by first class mail on or within a day after those respective dates to the Tourney Road address listed for SEC on its own website and on the website for the California Secretary of State. None of the four letters was returned as undeliverable. SEC placed a mail forwarding order with the post office when it relocated its offices to the Avenue Stanford address in the summer or fall of 2007 and it received mail at the Avenue Stanford address that had been forwarded from its former Tourney Road address. Because SEC's former Tourney Road address and its subsequent Avenue Stanford address were located in the same city and within the same zip code, it was unlikely that there would have been any significant delay in the delivery of mail forwarded from the Tourney Road address. The absence of any such delay was confirmed by Riley's testimony that he received Hamilton's April 29, 2008 letter (sent by mail to SEC's Tourney Road address) at SEC's Avenue Stanford address in early May 2008 -- within three or four days after the letter was mailed. Based on this evidence, the trial court could reasonably conclude that Hamilton's March 10, and March 15, 2008 letters were delivered to SEC's Avenue Stanford address within three or four days after those letters were mailed.

---

**2**     Although this factual finding is listed as a "conclusion of law" in the trial court's statement of decision, it is a factual and not a legal determination. (See *Colleen M., supra*, 132 Cal.App.4th at pp. 1479-1480 [no triable issue of fact as to whether attorney received subpoena properly addressed and sent by mail]; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 852 [preponderance of evidence standard of proof requires a finding that the fact to be proven is more likely than not].)

## DISPOSITION

The judgment is affirmed.  Hamilton is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST