**Mike LOVE**

v.

**THE MAIL ON SUNDAY, et al.**

**No. CV 05 7798 ABC PJWX.**

United States District Court,
C.D. California.

Feb. 8, 2007.

Alfred G. Rava, The Rava Law Firm, San Diego, CA, Philip H. Stillman, Flynn & Stillman, Cardiff, CA, for Mike Love.

Andrew J. Thomas, Kelli L. Sager, Robyn Aronson, Davis Wright Tremaine, Los Angeles, CA, for The Mail on Sunday, Associated Newspapers Ltd.

Neville L. Johnson, Nicholas A. Kurtz, Johnson & Rishwain, Beverly Hills, CA, for Bigtime TV.

Barry E. Mallen, Joy T. Teitel, Manatt Phelps & Phillips, Edward A. Ruttenberg, Leopold Petrich & Smith, Los Angeles, CA, Gregory J. Aldisert, Kinsella Weitzman Iser Kump and Aldisert, Santa Monica, CA, for Brian Wilson, Jean Sievers, Lippin Group Inc., Soop LLC, David Leaf.

COLLINS, District Judge.

**Proceedings:** DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE THIRD CLAIM FOR RELIEF (In Chambers)

Pending before the Court is a Motion For Partial Summary Judgment On The Third Claim For Relief For Federal Unfair Competition Pursuant To 15 U.S.C. § 1125(a) ("Motion"), filed on October 16, 2006, by defendants Jean Sievers, The Lippin Group, Inc., Soop LLC, Brian Wilson, David Leaf and Sanctuary Records Group Ltd. ("Defendants"). Plaintiff filed an Opposition on December 4, 2006, to which all Defendants jointly replied on December 11, 2006. David Leaf also filed a separate Reply on December 11, 2006. The Court found this matter appropriate for submission without oral argument and vacated the hearing date. *See* Fed. R. Civ. Pro. 78; Local Rule 7–15. Upon consideration of the parties' submissions and the case file, the Court hereby GRANTS Defendants' Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

The background of this case has been set forth several times in this Court's previous orders. This is the latest in a long history of litigation involving the principal members of the well-known musical group. The Beach Boys. In summary, Plaintiff Mike Love alleges that Defendants created and distributed a so-called covermount CD ("covermount CD" or "CD") of Beach Boys songs and Brian Wilson solo material, performed by Brian Wilson, to millions of people. Plaintiff claims that the CD and its associated advertisements violated certain of his rights, including his rights under the Lanham Act, which is the only claim in issue in this Motion. This "Good Vibrations" covermount CD was distribut-

ed in the United Kingdom, through the September 26, 2004, edition of the newspaper *Mail on Sunday*, published by Associated Newspapers Limited ("ANL"). The covermount CD was also allegedly promoted on United Kingdom television and on the internet by Bigtime.TV. Plaintiff claims that the distribution of this CD has, among other things, damaged existing and future sales of Beach Boys albums and concert tickets, and has tarnished the Beach Boys' trademark.

Both ANL and Bigtime.TV, United Kingdom entities, were previously dismissed from this case upon the Court's grant of their motions to dismiss for lack of personal jurisdiction. Thereafter, the parties litigated two rounds of Motions to Dismiss, resulting in this Court's dismissal of many of Plaintiff's claims.

Now pending before the Court is Defendants' Motion to dismiss Plaintiff's Lanham Act claim for federal unfair competition, 15 U.S.C. § 1125(a). This claim is based on the CD's use of Beach Boys photos that included Plaintiff's image, and on the use of the phrase "The Beach Boys" on the CD and in related advertisements for the CD.[1] Defendants contend that they are entitled to summary judgment on a number of grounds. First, they argue that Plaintiff lacks standing to assert his Lanham Act claims. Second, Defendants state that the covermount promotion was not created by or for Defendants; rather, it was a promotion conceived by Bigtime.TV for ANL. Further, Defendants state that they did not create the cover artwork or companion advertisements on which Plaintiff bases his claims. Thus, the uncontroverted facts establish that they did not cause any of the alleged harm. Third, Defendants argue that the Court lacks subject matter jurisdiction over this claim because the facts and allegations of this

case do not warrant the extraterritorial application of the Lanham Act. Plaintiff contends that none of these arguments has merit. Plaintiff also asks for a continuance, under Federal Rule of Civil Procedure 56(f), to engage in discovery that will allow him to more fully oppose Defendants' Motion.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.*, 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

If, as here, the non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted).

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings.... [T]he adverse party's response ... must set forth *specific facts showing that there is a genuine issue for trial.*" Fed. R. Civ. Pro.

---

1. The Court need not reach the question of whether the use of "The Beach Boys" on the

CD and advertising materials infringed on Plaintiff's trademark rights or other rights.

56(e) (emphasis added). A "genuine issue" of material fact exists only when the non-moving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Whether the Lanham Act Applies to the Alleged Conduct

Plaintiff states his third claim for relief under the Lanham Act, 15 U.S.C. § 1125(a), which prohibits the use of "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is likely to cause confusion as to the origin of the goods in question, or that is likely to misrepresent the nature of the goods. 15 U.S.C. § 1125(a)(1)(A)-(B). Although Plaintiff's Second Amended Complaint ("SAC") does not clearly identify which Lanham Act violation Defendants allegedly committed, his opposition brief indicates that he is pursuing claims for false designation and false advertising. Independent of which species of Lanham Act claim Plaintiff tries to state, however, his claims are predicated overwhelmingly on foreign

activities. Defendants contend that the Lanham Act cannot reach this conduct, and that the Court must therefore grant summary judgment in their favor.

### 1. Test for Extraterritorial Application of the Lanham Act

The Ninth Circuit has held that "the Lanham Act's coverage of foreign activities may be analyzed under the test for extraterritorial application of the federal anti-trust laws set forth in *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir.1976) (*Timberlane I*)." *Star–Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir.1985). In *Timberlane I*, the Court identified three criteria that must be satisfied to apply federal anti-trust law, and by extension, the Lanham Act, extraterritorially: first, the alleged violations must create some effect on American foreign commerce; second, the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; and third, the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. *Timberlane I*, 549 F.2d at 613–15.

### 2. There Is No Basis for Applying the Lanham Act to the Conduct Alleged

 The undisputed facts relevant to this issue preclude extraterritorial application of the Lanham Act. It is undisputed that the allegedly infringing acts occurred overseas. The idea for the CD originated with Ian Spero ("Spero") of Bigtime.TV, who approached ANL (both U.K. entities) with the idea of releasing the CD as a promotional covermount. Uncontroverted Fact ("UF") No. 4.[2] Actual physical manu-

**2.** Although Plaintiff and Defendants both submitted statements of uncontroverted facts, the Court's references are to Defendants' statement.

facture of the CDs was handled by Optical Disc Services Limited ("ODS"), a company based in Germany that has offices in London. UF No. 9. Wilson's attorney Eric Custer ("Custer") advised Spero against using photographs of anyone other than Wilson. UF No. 11. Custer also advised Spero that it was necessary to secure permission directly from the respective members of The Beach Boys to use their images in any such photographs, which should be avoided in any case since the focus of the CD was Brian Wilson's career, not The Beach Boys. UF No. 12. The CDs were not distributed in the United States, which is undisputed by Plaintiff, who in fact concedes that "the actual unfair competition occurred in the United Kingdom" and "the distribution of the infringing Good Vibrations CD occurred substantially in the U.K." Opp. 7:16–17, 10:28. Neither Wilson, nor any of his representatives including Custer or Sievers or the Lippin Group, nor Leaf, nor Sanctuary sold or distributed any copies of the CD to any members of the public or to anyone at all. UF No. 25. Plaintiff attempts to dispute this fact by reference to the CDs that Custer asked Spero to send him. However, Plaintiff has failed to raise a genuine issue. In his declaration, Custer makes clear that he requested a number of CDs for either the personal use of Wilson's agents or for their files. He also states that he ultimately received only a handful of copies, and that he never sent the CDs to anyone, but instead he stored them in his office credenza, and only gave copies to litigation counsel in connection with this matter. Custer Decl. ¶¶ 25–27. Thus, it remains undisputed that no Defendants distributed the CD to anyone, let alone to anyone in the United States. Plaintiff's only evidence of distribution in the United States is via the secondary market for used CDs over eBay. However, for reasons discussed below, the Court will disregard this evidence. Accordingly, the only evidence presented establishes that Defendants did not distribute the CDs in the United States; rather, ANL—no longer a defendant—distributed them in the United Kingdom only.

On these facts, the Lanham Act does not apply. First, there is no evidence that the alleged activity affected United States commerce in any way. The only evidence that the CD ever entered United States commerce is the single CD sold to Steven Surrey through eBay, whose declaration states that he was confused by and mistook the CD for a compilation of Beach Boys recordings, as opposed to Brian Wilson recordings. However, the Court is skeptical of the authenticity of this evidence because of the apparent association between the ostensible purchaser Mr. Surrey and Plaintiff's counsel. Reply 7:16–8:13. This evidence therefore carries no weight with this Court; indeed, its only effect is to earn Plaintiff's counsel sanctions, as discussed below. Plaintiff's only other allegation of an effect on American commerce is the attenuated effect that the CD, although distributed in the U.K., increased demand for Wilson's concerts, which in turn decreased demand for Plaintiff's concerts. Oppo. 14:3–22; Love Decl. ¶ 4. However, Plaintiff's only evidence of this effect is his own declaration, which is purely speculative. Thus, Plaintiff has submitted no evidence whatsoever substantiating this allegation. Accordingly, based on the undisputed facts, the Court discerns no effect from this activity on American commerce. By its own terms, the second *Timberline I* element—that the effect must be sufficiently great to harm the plaintiff—depends on the existence of an effect. Since there is no evidence of any such effect on United States commerce, Plaintiff can demonstrate no harm caused by that effect.

The third element of the *Timberline I* test entails a comparison of how the allegedly wrongful activity is linked to American commerce, relative to its links to the commerce of other nations, and a comparison of the interests each nation has in that activity. Since there is no evidence of any effect on American commerce, arguably, the Court need not reach this element. However, the Court will address it in the interest of completeness.

The *Timberlane I* Court identified seven sub-factors relevant to the third element: (1) the degree of conflict between U.S. law and foreign law or policy, (2) the nationality or allegiance of the parties and the locations or principal places of business of corporations, (3) the extent to which enforcement by either state can be expected to achieve compliance, (4) the relative significance of effects on the United States as compared with those elsewhere, (5) the extent to which there is explicit purpose to harm or affect American commerce, (6) the foreseeability of such effect, and (7) the relative importance to the violations charged of conduct within the United States as compared with conduct abroad. *Timberlane I,* 549 F.2d at 614.

Based on these considerations, the third element weighs heavily against allowing extraterritorial application of the Lanham Act. First, English law governing Plaintiff's claims differs significantly from the U.S. law he invokes. Plaintiff claims that the Lanham Act violations arise out of Defendants' wrongful use of his "persona" and The Beach Boys mark. However, it appears that the "persona" claim is akin to a right of publicity, a right that English law does not recognize. *See* August 15, 2006 Order, pp. 4–6. In addition, the analogous U.K. claim of "false endorsement" is cognizable in narrower circumstances than in the U.S. *See Irvine Talksport Ltd.,* 2 All Eng. Rep. 881 (Ct.App.2003), Exhibit D to Teitel Decl. Given the narrower scope of the English cause of action, the Court should not apply U.S. trademark law, because the conduct might have been lawful in the country in which it occurred. Second, the parties who engaged in the conduct are domiciled in the U.K. and have already been dismissed from this action. The third sub-factor also counsels against application of the Lanham Act: since the majority of the allegedly infringing conduct occurred in the United Kingdom, a court there is better-positioned than this Court to provide effective relief. The fourth sub-factor also counsels against application of the Lanham Act, because the significance of the effect on commerce in the U.K.—where 2.6 million CDs were distributed—far exceeds the effect, if any, that the activity had on U.S. commerce. There is no evidence that the Defendants had the explicit purpose to harm U.S. commerce. Whether any such effect was foreseeable is of no import here, because there is no evidence of any effect. Finally, since it is undisputed that the infringing acts occurred overseas, the conduct that occurred abroad is far more important to the allegations of this case than any conduct that occurred in the United States. In short, the seven sub-factors compel the Court to conclude that there is no United States interest in the alleged misconduct substantial enough to justify an assertion of extraterritorial authority. Indeed, any minimal United States interest in the conduct is far outweighed by the interest the United Kingdom would have because the CDs were distributed there, and the conduct occurred there.

### 3. Case Law Counsels Against Applying the Lanham Act to the Conduct Alleged

This conclusion is consistent with *Star-Kist,* which extended the *Timberline I* factors, developed with regard to extraterritorial application of the anti-trust laws, to

the Lanham Act context. In *Star–Kist*, the Court held that the unauthorized sale in the Philippines of tuna in cans bearing the plaintiff's marks did not violate the Lanham Act. Even though the defendants may have purchased the tuna cans in the United States, which would have caused an effect on United States commerce, the Court found that applying U.S. law would create a conflict with Philippine patent and trademark law. *Star–Kist*, 769 F.2d at 1396. In addition, the Court noted that witnesses and documentary evidence were in the Philippines, and that the effect on United States commerce from the illegal use of the trademarks was insignificant compared to the effect on Philippine commerce. *Id.* Ultimately, the Court concluded that "[t]hese factors indicate that the significant interest of the Philippines in restricting the extraterritorial application of the Lanham Act should preclude extension of the Act to wholly foreign commerce in this case." *Id.* Here, where the allegedly infringing acts occurred overseas and had no effect on United States commerce, there is even less reason to apply the Lanham Act.

Plaintiff cites several cases to bolster his argument that the Lanham Act should apply here. However, each of those cases is readily distinguishable from this case, and therefore they are of no persuasive value. For example, in *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir.1992), the United States defendants were accused of directing the manufacture of counterfeit Reebok sneakers, and selling them in Mexico. However, in balancing the relative significance of the effects of these activities on the United States in comparison with effects in Mexico, the Court noted that defendant was selling the shoes in Mexican border towns knowing that these counterfeit shoes would in turn be imported to the United States. *Reebok*, 970 F.2d at 557. Thus, the Court concluded that the *Reebok* de-

fendant directed his activity towards the U.S., and that the activity had a relatively significant effect on U.S. commerce, justifying extraterritorial application of the Lanham Act. *Id.* Here, by contrast, to the extent Defendants were involved in the infringing activity, there is no evidence that they directed such activity towards the United States or expected or foresaw it to have any impact on United States commerce. *Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500 (9th Cir.1991) is also distinguishable. There, the Court upheld extraterritorial application of the Lanham Act on the ground that the infringing activities were orchestrated from the U.S. by U.S. defendants; there was evidence that the defendant intended to infringe, and therefore directed the activity at the U.S. plaintiff with the purpose of harming a U.S. corporation; and the harm was important to U.S. commerce because the goods were exported through a U.S. foreign trade zone. *Ocean Garden*, 953 F.2d at 504. None of the same considerations obtains in this case.

Because there is no evidence that the alleged infringing conduct affected United States commerce, Plaintiff cannot demonstrate that the Lanham Act should apply to the extraterritorial acts that give rise to his third cause of action. By contrast, the undisputed facts establish that Defendants neither sold nor distributed any CDs in the United States, and Plaintiff has failed to come forward with any cognizable evidence of a United States effect. Although Plaintiff made a Rule 56(f) request for a stay pending additional discovery, that request is not directed at finding evidence of effects on United States commerce; rather, the request goes to other aspects of Defendants' Motion. Accordingly, the Lanham Act does not apply to the acts alleged herein, the Court lacks subject matter jurisdiction over the claim, and Defendants are entitled to summary judgment there-

on. Since the Court will grant Defendants' motion on this ground, it need not reach the alternative grounds.

### B. Dismissal of Plaintiff's Fourth Cause of Action, for Unfair Competition under California Bus. & Prof.Code § 17200

On its own motion, the Court also dismisses Plaintiff's fourth cause of action, for unfair competition under California Business & Professions Code § 17200. The Court notes that after litigating two motions to dismiss, the only remaining basis for Plaintiff's § 17200 claim was his Lanham Act claim. Because the Court is granting summary judgment for Defendants as to the Lanham Act claim, there now remains no predicate claim to support Plaintiff's § 17200 claim. Accordingly, Plaintiff's fourth claim for relief is hereby DISMISSED with prejudice.

### C. Sanctions Against Plaintiff's Counsel

■ Plaintiff's counsel has repeatedly engaged in conduct in this case that has caused this Court to issue a number of strongly-worded admonitions. In its August 15, 2006 Order, the Court *sua sponte* dismissed Melinda Wilson from the action because Plaintiff's attempt to join her exceeded the scope of the Court's order granting him leave to amend to state allegations germane to personal jurisdiction over certain U.K. defendants. Most recently, in its November 16, 2006, Order, the Court admonished Plaintiff for his disingenuous claim of California residence after he consistently alleged in previous filings that he is a Nevada resident. The Court warned Plaintiff that he would be sanctioned if he engaged in similar conduct in the future. In that same Order, the Court admonished Plaintiff for submitting a sloppily-assembled opposition brief.

Here, in an attempt to demonstrate that the alleged Lanham Act violations affected U.S. commerce, Plaintiff's counsel submitted a Declaration of Steven Surrey, their only evidence of any CDs reaching the U.S. market. Therein, Surrey claims that he purchased one of the CDs over eBay. He claims that he bought the CD because he thought, based on its display of The Beach Boys name and images, including images of Mike Love, that the CD included Beach Boy sound recordings. Surrey Decl. ¶¶ 5–6. Plaintiff's papers give the impression that Surrey was an innocent consumer confused as to the origin and content of the CD. However, Defendants submitted evidence in their Reply, including a printout of a Lexis–Nexis docket search, showing that Surrey is not an independent "consumer," rather, he has apparently been either co-plaintiff with Alfred Rava, or represented by Rava or Flynn & Stillman (both are Plaintiff's counsel in this action), in dozens of gender and age discrimination lawsuits filed against various businesses and non-profit entities. Defendants' Reply was filed on December 11, 2006. Plaintiff has filed no paper refuting Defendants' allegation that Surrey is his counsel's close associate and not a "confused consumer," and he has not otherwise tried to rehabilitate the Surrey Declaration. At a minimum, Plaintiff's counsel should have disclosed his relationship with Surrey; his failure to do so gives rise to the inference that the Surrey Declaration was an attempt to manufacture a genuine issue of fact where none exists. Not only did Plaintiff's counsel's conduct completely undermine the credibility of the Surrey Declaration and the opposition to the motion, it also unreasonably and vexatiously again lengthened or multiplied both Defendants' and the Court's work. Thus, the Court will impose sanctions on Plaintiff's counsel for attempting to mislead and deceive this Court, and for wasting Defen-

dants' and this Court's time and resources.[3]

Pursuant to the Court's inherent authority to do so and 28 U.S.C. § 1927, Plaintiff's counsel is hereby SANCTIONED and ORDERED to pay the sum of one thousand dollars ($1,000.00), to the Clerk of the Court, within ten (10) days of the issuance of this order.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's third claim, for violation of the Lanham Act. The Court also DISMISSES, on its own motion, Plaintiff's fourth claim, for violation of California Business & Professions Code § 17200. The Court notes that the only claim remaining in this vastly overpled case is Plaintiff's claim for breach of fiduciary duty against Brian Wilson, based on an alleged partnership between Wilson and Love.

Plaintiff's counsel is sanctioned one thousand dollars ($1,000.00), to be paid to the Clerk of the Court within ten (10) days of this Order.

**IT IS SO ORDERED.**

---

**3.** Any other similar misconduct will subject Plaintiff's counsel to Rule 11 sanctions.